No. 24-1822

# In the United States Court of Appeals for the Fourth Circuit

KAREN LOWY, individually and as parent and next friend of N.T., AND ANTONIO HARRIS, PLAINTIFFS-APPELLANTS

*v.*

DANIEL DEFENSE, LLC; FAB DEFENSE, INC.; FAB MANUFACTURING & IMPORT OF INDUSTRIAL EQUIPMENT LTD.; BRAVO COMPANY USA, INC.; LOYAL 9 MANUFACTURING, LLC; FOSTECH, INC.; HEARING PROTECTION, LLC; CENTURION ARMS, LLC; MAGPUL INDUSTRIES CORP.; FEDERAL CARTRIDGE COMPANY; VISTA OUTDOOR, INC.; FIOCCHI OF AMERICA, INC.; FIOCCHI MUNIZIONI S.P.A.; SUREFIRE, LLC; TORKMAG, INC., DEFENDANTS-APPELLEES

and

STARLINE, INC. AND JOHN DOES 1–20, DEFENDANTS

---

*ON APPEAL FROM THE U.S. DISTRICT COURT*
*FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA*
*(NOS. 23-1338, 23-1501) (THE HONORABLE CLAUDE M. HILTON, J.)*

---

**AMICI CURIAE BRIEF IN SUPPORT OF APPELLANTS ON BEHALF OF EVERYTOWN FOR GUN SAFETY SUPPORT FUND, BRADY CENTER TO PREVENT GUN VIOLENCE, GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, AND GLOBAL ACTION ON GUN VIOLENCE**

---

KEITH J. HARRISON
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
    (202) 624-2500
    kharrison@crowell.com

*Counsel for Amici Everytown for Gun Safety Support Fund, Brady Center to Prevent Gun Violence, Giffords Law Center to Prevent Gun Violence, and Global Action on Gun Violence**

---

\* Additional counsel for Amici are listed on the signature block of this brief.

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety Support Fund ("Everytown") is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Brady Center to Prevent Gun Violence ("Brady") is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Giffords Law Center to Prevent Gun Violence ("Giffords Law Center") is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Global Action on Gun Violence ("GAGV") is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

**TABLE OF CONTENTS**

STATEMENT OF INTEREST ..................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 2

I.    The District Court's Ruling on Standing Ignores Both
      Precedent and the Practical Reality of Gun Violence Cases . . 3

      A.    The District Court's Interpretation Departs from
            Existing Law. .................................................... 4

      B.    FOIA and Similar Acts Permit Law Enforcement to
            Withhold Key Information from Victims and Survivors
            of Gun Violence. ................................................. 5

      C.    The Available Information in Gun Violence Cases
            Varies Significantly Case to Case. ........................... 13

II.   The District Court Interpreted PLCAA's Predicate Exception
      So Narrowly as to Eliminate the Exception Altogether ....... 16

      A.    PLCAA Assumes That Gun Industry Members Can Be
            Held Liable for Gun Violence in Some Circumstances.
            .................................................................... 17

      B.    Governing Law Establishes That A Single Event Can
            Have Multiple Proximate Causes. ............................ 21

CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bains v. American Tactical, Inc.*,
No. 2:24-cv-3970-BHH (D.S.C. Aug. 30, 2024) ................................... 11

*Brady v. Walmart Inc.*,
No. 8:21-CV-1412-AAQ, 2022 WL 2987078 (D. Md. July
28, 2022) ...................................................................................... 20

*Chisolm v. TranSouth Fin. Corp.*,
95 F.3d 331 (4th Cir. 1996) ............................................................. 21

*City of New York v. Beretta U.S.A. Corp.*,
524 F.3d 384 (2d Cir. 2008) ............................................................. 1

*Clark v. Sacramento County District Attorney's Office*,
No. 34-2020-80003417 (Cal. Sup. Ct. Sacramento Cnty.
June 29, 2020) ............................................................................. 8, 9

*Estados Unidos Mexicanos v. Diamondback Shooting Sports
Inc.*,
No. 22-cv-00472-TUC-RM, 2024 U.S. Dist. LEXIS 52185
(D. Ariz. Mar. 22, 2024) ................................................................. 2

*Estate of Kim v. Coxe*,
295 P.3d 380 (Alaska 2013) ............................................................. 1

*Goldstein v. Earnest*,
No. 37-2020-00016638-CU-PO-CTL. (Cal. Sup. Ct. San
Diego Cnty. July 22, 2021) ............................................................. 15

*In re LuckyGunner LLC*,
No. 14-21-00194-CV, 2021 WL 1904703 (Tex. Ct. App.
May 12, 2021), *further mandamus review denied*, No. 21-
0463 (Tex. Feb. 18, 2022) ............................................................... 1

*Johal v. American Tactical, Inc.*,
 No. 2:24-cv-3969-BHH (D.S.C. Aug. 30, 2024) ................................. 11

*Jones v. Mean LLC*,
 No. 810316/2023 (N.Y. Sup. Ct. Erie Cnty. Aug. 15, 2023)............... 15

*Nat'l Shooting Sports Found. v. Att'y Gen. N.J.*,
 No. 23-1214 (3d Cir. Apr. 7, 2023)....................................................... 18

*Paroline v. United States*,
 572 U.S. 434 (2014) ............................................................................ 22

*People of the State of California v. Blackhawk Mfg. Grp.,
 Inc., et al.*,
 No. CGC-21-594577 (Cal. Sup. Ct. May 2, 2023)................................ 1

*Roberts et al. v. Smith & Wesson Brands, Inc.*,
 No. 22-LA-00000487 (Ill. Cir. Ct. Lake Cnty. Sept. 27,
 2022) .......................................................................................... 13, 14

*Sheppard v. Maxwell*,
 384 U.S. 333 (1966) .............................................................................. 7

*Soto v. Bushmaster Firearms Int'l, LLC*,
 202 A.3d 262 (Conn. 2019)............................................................ 19-20

*Turnipseed v. Smith & Wesson Brands, Inc.*,
 No. 22-LA-00000497 (Ill. Cir. Ct. Lake Cnty. Sept. 28,
 2022) .................................................................................................. 13

*Vaughn v. Perea*,
 No. 20-7532, 2021 WL 5879176 (4th Cir. Dec. 13, 2021) .................... 4

*Williams v. Beemiller, Inc.*,
 952 N.Y.S.2d 333 (N.Y. App. Div. 2012), *opinion amended
 on reargument*, 962 N.Y.S.2d 834 (N.Y. App. Div. 2013) ............. 18-19

*Williams v. Joynes*,
 677 S.E.2d 261 (Va. 2009).................................................................. 21

*Woods v. City of Greensboro*,
  855 F.3d 639 (4th Cir. 2017) ............................................................... 4

*Yanas v. Pagourtzis*,
  Cause No.: CV-0081158 (Galveston Cnty. Ct. No. 3 Mar.
  4, 2020) ............................................................................................... 10

**Statutes**

5 U.S.C. § 552(b)(7) .................................................................................. 6

15 U.S.C. § 7901(b)(1) ............................................................................. 17

15 U.S.C. § 7903(5)(A) ............................................................................. 16

15 U.S.C. § 7903(5)(A)(iii) ................................................................. 17, 22

Florida's Public Records Act, Fla. Stat. Ann. § 119.071 .......................... 6

Georgia Open Records Act, Ga. Code Ann. § 50-18-72 ............................ 6

Protection of Lawful Commerce in Arms Act ("PLCAA") .............. *passim*

Texas Public Information Act, Tex. Gov't Code Ann.
  § 552.108 .............................................................................................. 7

Va. Code Ann. § 2.2-3706 ......................................................................... 6

**Other Authorities**

Cailey Gleeson, *Alleged Chicago-Area 4th of July Shooter
  Abruptly Rejected Plea Deal—Will Face Trial For Killing
  7*, Forbes, Jun. 27, 2024, available at
  https://www.forbes.com/sites/caileygleeson/2024/06/26/alle
  ged-chicago-area-4th-of-july-shooter-abruptly-rejects-plea-
  deal-will-face-trial-for-killing-7/ ........................................................ 14

Gregory Krieg, *What We Know About The Highland Park
  Shooting*, CNN, July 7, 2022, available at
  https://www.cnn.com/2022/07/05/us/what-we-know-
  highland-park-shooting/index.html ..................................................... 14

*July 4, 2022 FOIA Responses*, City Clerk of Highland Park, available at https://www.cityhpil.com/government/city_departments/city_manager_s_office/city_clerk/fourth_of_july_foia_response.php ........................................................................ 14

Justin P. Murphy & Adrian Fontecilla*, Social Media Evidence in Government Investigations and Criminal Proceedings: A Frontier of New Legal Issues*, 19 Rich. J.L. & Tech. 11 (2013), available at http://scholarship.richmond.edu/jolt/vol19/iss3/4 ............................ 12

Jillian Peterson et al., *How Mass Public Shooters Use Social Media: Exploring Themes and Future Directions*, Social Media + Society (Feb. 26, 2023), available at https://doi.org/10.1177/20563051231155101 ...................................... 11

Nick Powell, *Three Years after Santa Fe Shooting, Victims' Families and Community Still Seeking Answers*, Houston Chron., May 19, 2021, available at https://www.houstonchronicle.com/news/houston-texas/crime/article/santa-fe-shooting-third-anniversary-victims-family-16187847.php ................................................. 9

Peter Hermann et al., *Raymond Spencer left an online footprint after D.C. shooting*, Wash. Post, Apr. 23, 2022, available at https://www.washingtonpost.com/dc-md-va/2022/04/23/raymond-spencer-dc-shooting/ .................................... 11

Restatement (Third) of Torts: Phys. & Emot. Harm § 29 cmt. a (2010) ......................................................................... 21

Robert Arnold, *Santa Fe Mass Shooting Civil Trial Postponed, DA's Office to Hand Over Some Information from Criminal Case*, KPRC, May 7, 2024, available at https://www.click2houston.com/news/investigates/2024/05/07/santa-fe-mass-shooting-civil-trial-postponed-das-office-to-hand-over-some-information-from-criminal-case/ ......................... 10

## STATEMENT OF INTEREST[2]

Amici Everytown, Brady, Giffords Law Center, and GAGV are national gun violence prevention organizations that conduct research on gun violence and the role that the gun industry can play in reducing it. Additionally, Amici have extensive experience litigating cases under the Protection of Lawful Commerce in Arms Act ("PLCAA") and are familiar with the nature and scope of PLCAA's litigation protection. *See, e.g.*, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) (Brady serving as plaintiff's counsel in case involving interpretation of PLCAA); *Estate of Kim v. Coxe*, 295 P.3d 380 (Alaska 2013) (same); *In re LuckyGunner LLC*, No. 14-21-00194-CV, 2021 WL 1904703 (Tex. Ct. App. May 12, 2021) (Everytown serving as plaintiff's counsel in case involving interpretation of PLCAA), *further mandamus review denied*, No. 21-0463 (Tex. Feb. 18, 2022); *People of the State of California v. Blackhawk Mfg. Grp., Inc., et al.*, No. CGC-21-594577 (Cal. Sup. Ct. May 2, 2023) (Giffords Law Center serving as plaintiff's counsel in case involving interpretation

---

[2] No counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae* and their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

of PLCAA); *Estados Unidos Mexicanos v. Diamondback Shooting Sports Inc.*, No. 22-cv-00472-TUC-RM, 2024 U.S. Dist. LEXIS 52185 (D. Ariz. Mar. 22, 2024) (GAGV serving as plaintiff's counsel in case involving interpretation of PLCAA).

Amici submit this brief in support of Plaintiffs to provide context regarding civil litigation against gun industry defendants and the application of PLCAA by courts across the country.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court misapplied governing law and, in doing so, announced an impossibly high standard for cases seeking redress for gun violence. First, the district court held that Plaintiffs lacked standing, in part because certain allegations were made on information and belief. But there is nothing improper about such pleading when the relevant underlying evidence is held by third parties and inaccessible to Plaintiffs. Indeed, survivors of gun violence often must plead on information and belief because law enforcement typically keeps information confidential long after the time when prospective plaintiffs must bring suit. In these circumstances, pleading on information and belief is wholly appropriate.

Second, the district court held that Plaintiffs could not satisfy the predicate exception to PLCAA, in part because the district court deemed their allegations of causation insufficient. In doing so, the district court applied a heightened causation standard that the law does not support. To the contrary, many courts and PLCAA itself recognize that defendants—like those here—can proximately cause an injury even when a third party actually pulled the trigger.

The district court's order goes well beyond what Congress and other courts have required. And it sets a dangerous precedent that would impede the ability of victims of gun violence to obtain justice in court.

## I.  The District Court's Ruling on Standing Ignores Both Precedent and the Practical Reality of Gun Violence Cases.

In this case, Plaintiffs do not have access to certain key evidence supporting their allegations regarding the shooter's influences and motivations. Appellants' Br. at 33 & n.9. Plaintiffs accordingly made certain of their allegations on information and belief. *Id*. Pleading on information and belief is frequently necessary in civil litigation stemming from gun violence. Amici regularly find that certain aspects of critical evidence are in the hands of law enforcement and other third parties, who often withhold it until the commencement of formal discovery or until all

criminal proceedings are over. In ruling that pleading upon information and belief is only appropriate when information is held by a defendant, the district court unjustifiably raised the pleading threshold in a way that is particularly harmful to victims and survivors of gun violence, and inconsistent with this Court's precedent.

## A. The District Court's Interpretation Departs from Existing Law.

Pleading on information and belief is appropriate when underlying evidence is not in the possession of the plaintiff. *See Vaughn v. Perea*, No. 20-7532, 2021 WL 5879176, at *2 (4th Cir. Dec. 13, 2021) (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (4th ed.)) (pleading on information and belief "is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject"). In fact, this Court has admonished district courts against imposing overly stringent pleading requirements, particularly in situations where plaintiffs "are more likely to suffer from information-asymmetry, pre-discovery." *Woods v. City of Greensboro*, 855 F.3d 639, 652 (4th Cir. 2017) (observing that

-4-

"discrimination claims are particularly vulnerable to premature dismissal").

Despite these admonishments, the district court here rejected pleadings on information and belief because the underlying evidence was held by a third party rather than by Defendants. *See* Order at 5 (rejecting Plaintiffs' complaint because it "does not suggest defendants control [the] evidence"). But this case—like many gun violence cases—is exactly the type of situation where a significant information asymmetry exists, pre-discovery. *See infra* Sections I.B–C. Therefore, the district court's standard is inconsistent with this Circuit's precedent regarding overly stringent pleading rules and does not recognize the reality of gun violence cases.

**B.    FOIA and Similar Acts Permit Law Enforcement to Withhold Key Information from Victims and Survivors of Gun Violence.**

By their nature, gun violence cases almost always involve law enforcement. Civil suits typically must be filed during the pendency of criminal investigations and prosecutions, which often continue beyond the running of civil statutes of limitations. Yet, understandably, law enforcement is rarely willing to share information before the criminal

case is closed. In fact, state and federal public-records laws typically allow law enforcement to withhold relevant information from the public, without exceptions for victims' families or potential plaintiffs.

Specifically, FOIA permits law enforcement agencies to withhold information compiled for law enforcement purposes, including records or information that could interfere with enforcement proceedings, would deprive a person of a right to a fair trial or an impartial adjudication, could reasonably be expected to constitute an unwarranted invasion of personal privacy, or could reasonably be expected to disclose the identity of a confidential source. 5 U.S.C. § 552(b)(7). States have similar exemptions. For instance, under the Virginia Freedom of Information Act, "criminal investigative files"—which broadly includes reports and evidence relating to criminal investigations or prosecutions—are exempt from mandatory disclosures, but can be disclosed on a discretionary basis. Va. Code Ann. § 2.2-3706.[3]

---

[3] *See also, e.g.*, Florida's Public Records Act, Fla. Stat. Ann. § 119.071 (agency investigations are generally exempt from inspection or copying, including active criminal intelligence information and active criminal investigation information); Georgia Open Records Act, Ga. Code Ann. § 50-18-72 (certain materials are not required to be disclosed to the public, including "records of law enforcement, prosecution, or regulatory (Continued…)

Even when the shooter is deceased, as here, law enforcement often conducts lengthy investigations and will not share their investigative files until the investigations are complete. Good policy reasons support this practice, including protecting the constitutional rights of criminal defendants and the privacy rights of the victims and their families. *Cf. Sheppard v. Maxwell*, 384 U.S. 333, 350–51 (1966) (discussing the need for trials to be decided based on evidence, not outside media). Likewise, good policy reasons support pleading on information and belief: to balance these interests with the rights of survivors and families to seek redress through civil litigation within relevant statutes of limitations. Civil litigation, when it is not dismissed at the outset, also allows for confidential disclosure of those records in discovery—via protective orders—as compared to inherently non-confidential disclosure through public records requests.

---

agencies in any pending investigation or prosecution of criminal or unlawful activity"); Texas Public Information Act, Tex. Gov't Code Ann. § 552.108 (certain law enforcement information is exempt from mandatory disclosure, including information "held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime" if "release of the information would interfere with the detection, investigation, or prosecution of crime[.]").

In representing victims and survivors of gun violence, Amici regularly encounter similar obstacles in gathering evidence to bring civil actions against responsible parties. For instance, in 2018, Amber Clark was shot 11 times at point-blank range in the face and head as she sat in her car outside of the Sacramento Public Library where she worked. *Clark v. Sacramento County District Attorney's Office*, Case No. 34-2020-80003417, Compl. ¶ 1 (Cal. Sup. Ct. Sacramento Cnty. June 29, 2020).[4] Upon learning that the shooter had a long history of mental health issues that should have disqualified him from purchasing a firearm, Ms. Clark's family, through counsel at Everytown Law,[5] made public record requests to Sacramento authorities, including to seek information regarding how the shooter obtained a firearm. *Id.* ¶¶ 8-9; *Clark*, Case No. 34-2020-80003417, Dkt. No. 102, Ruling on Submitted Matter: Petition for Writ of Mandate ("Clark Order") at 2–3 (Cal. Sup. Ct. Sacramento Cnty. July 22, 2021).[6] The Sacramento authorities refused to provide this

---

[4] Available at https://everytownlaw.org/wp-content/uploads/sites/5/2020/07/amber-clark-complaint.pdf.

[5] Everytown Law is the litigation arm of Amicus Everytown.

[6] Available at https://everytownlaw.org/wp-content/uploads/sites/5/2021/09/2021.07.22-Final-Order-3.pdf.

information, including because the criminal case against the shooter was ongoing. Clark Order at 3. Ms. Clark's family filed suit, but the court denied their petition to obtain the information, holding that the information "could be used for impeachment purposes, taint the jury pool, interfere with the sanity portion of [the shooter's] criminal trial, and discourage cooperation among fellow law enforcement agencies." Clark Order at 8. Ms. Clark's family was thus deprived of any ability to seek justice through civil litigation.

Civil litigation arising out of the May 2018 mass shooting at Santa Fe High School in Santa Fe, Texas, in which Everytown Law served as counsel, also encountered challenges due to the denial of public-records requests. *Cf.* Nick Powell, *Three Years after Santa Fe Shooting, Victims' Families and Community Still Seeking Answers*, Houston Chron., May 19, 2021 (explaining that Texas's widely used exception to the state's public information laws allows prosecutors to withhold information about felonies from the public and even defendants until trial).[7] In that case, the plaintiffs brought negligence-based claims against the shooter's

---

[7] Available at https://www.houstonchronicle.com/news/houston-texas/crime/article/santa-fe-shooting-third-anniversary-victims-family-16187847.php.

parents for allowing their minor son to access their firearms, pleading that, among other things, the weapons were stored in an "irresponsible manner." *Yanas v. Pagourtzis*, Cause No. CV-0081158, 3d Am. Compl. ¶¶ 121–22 (Galveston Cnty. Ct. No. 3 Mar. 4, 2020).[8] The unavailability of records from the criminal proceedings against the shooter continued to be an obstacle throughout the pendency of the case. *See* Robert Arnold, *Santa Fe Mass Shooting Civil Trial Postponed, DA's Office to Hand Over Some Information from Criminal Case*, KPRC, May 7, 2024 (ordering limited documents from the criminal file to be produced to parties in civil case six years after the shooting).[9]

Similarly, Amicus Brady brought civil actions arising out of the April 2021 mass shooting at a FedEx facility in Indianapolis, Indiana. Due to the statute of limitations, Amicus Brady had to bring suit without having access to investigative files, while pleading certain allegations on

---

[8] Available at https://everytownlaw.org/wp-content/uploads/sites/5/2020/06/third-amended-petition-march-4-2020.pdf.

[9] Available at https://www.click2houston.com/news/investigates/2024/05/07/santa-fe-mass-shooting-civil-trial-postponed-das-office-to-hand-over-some-information-from-criminal-case/.

information and belief. *Bains v. American Tactical, Inc.*, No. 2:24-cv-3970-BHH, Dkt. No. 53, 2d Am. Compl. ¶¶ 28, 33, 46, 106 (D.S.C. Aug. 30, 2024); *Johal v. American Tactical, Inc.*, No. 2:24-cv-3969-BHH, Dkt. No. 85, 2d Am. Compl. ¶¶ 24, 29, 48 (D.S.C. Aug. 30, 2024).

Additionally, social media often plays a large role in mass shooting cases. *See* Jillian Peterson et al., *How Mass Public Shooters Use Social Media: Exploring Themes and Future Directions*, Social Media + Society, at *11-12 (Feb. 26, 2023)[10] (discussing that social media often reveals warning signs and the psychosocial life histories of mass shooters). In this case, for example, an investigation of the shooter revealed a suspicious search history on several online platforms, including 4chan and Wikipedia. *See* Peter Hermann et al., *Raymond Spencer left an online footprint after D.C. shooting*, Wash. Post, Apr. 23, 2022.[11] And shortly after the attack, the shooter updated his Wikipedia page to say that he was an "AR-15 aficionado." *Id.* But that page is no longer

---

[10] Available at https://doi.org/10.1177/20563051231155101.

[11] Available at https://www.washingtonpost.com/dc-md-va/2022/04/23/raymond-spencer-dc-shooting/.

accessible to Plaintiffs because social media platforms typically take the gunman's profile offline after a mass shooting. *See id.*

The amount of information stored by social media companies and made available only through subpoenas or warrants is astronomical. *See* Justin P. Murphy & Adrian Fontecilla*, Social Media Evidence in Government Investigations and Criminal Proceedings: A Frontier of New Legal Issues*, 19 Rich. J.L. & Tech. 11, at *1 (2013).[12] Accordingly, a Facebook response to a government subpoena, for example, could contain troves of nonpublic, relevant information, including the user's profile, wall posts, photos that the user uploaded, photos in which the user was tagged, and a long table of login and IP data, as well as precise location information. *See id.* at 4. But a plaintiff drafting a complaint would have no access to this information unless and until law enforcement agreed to release it.

As these examples demonstrate, pleading on information and belief is frequently necessary—and perfectly appropriate—in cases such as this one, because in gun violence cases, material information is nearly always

---

[12] Available at http://scholarship.richmond.edu/jolt/vol19/iss3/4.

in the hands of law enforcement or other third parties who refuse to disclose it prior to suit.

### C. The Available Information in Gun Violence Cases Varies Significantly Case to Case.

In gun violence cases, some plaintiffs do have access to more information than others, but this does not reflect on their diligence or the comparative merits of their claims. Instead, Amici have found that it is easier to obtain certain key information pre-complaint in gun violence cases that are heavily covered by the national media or based on other factors completely outside of the plaintiffs' control.

For example, Amici Everytown Law and Brady represent victims of the Highland Park, Illinois mass shooting, which occurred on July 4, 2022. *See, e.g., Roberts et al. v. Smith & Wesson Brands, Inc.*, No. 22-LA-00000487, Dkt. No. 1, Compl. (Ill. Cir. Ct. Lake Cnty. Sept. 27, 2022);[13] *Turnipseed v. Smith & Wesson Brands, Inc.*, No. 22-LA-00000497, Dkt. No. 1, Compl. (Ill. Cir. Ct. Lake Cnty. Sept. 28, 2022).[14] The shooting

---

[13] Available at https://everytownlaw.org/wp-content/uploads/sites/5/2022/09/2022.09.27-Complaint.pdf.

[14] Available at https://brady-2-stage.s3.amazonaws.com/2022.09.28-Complaint.pdf.

(Continued…)

attracted significant news coverage—which included information about the shooting itself, the weapon used, and the shooter's history. *See, e.g.,* Gregory Krieg, *What We Know About The Highland Park Shooting*, CNN, July 7, 2022.[15] Due to the extensive press interest, the City of Highland Park also made certain information available immediately following the shooting that would otherwise have required a FOIA request. *See July 4, 2022 FOIA Responses*, City Clerk of Highland Park.[16] Even with so much public information, because the criminal proceedings are still ongoing,[17] the plaintiffs had to file suit without access to the criminal file. Therefore, the plaintiffs necessarily made certain allegations on information and belief. *See, e.g.*, *Roberts* Complaint ¶¶ 130–31; *Turnipseed* Complaint ¶¶ 131, 135, 138.

---

[15] Available at https://www.cnn.com/2022/07/05/us/what-we-know-highland-park-shooting/index.html.

[16] Available at https://www.cityhpil.com/government/city_departments/city_manager_s_office/city_clerk/fourth_of_july_foia_response.php.

[17] *See* Cailey Gleeson, *Alleged Chicago-Area 4th of July Shooter Abruptly Rejected Plea Deal—Will Face Trial For Killing 7*, Forbes, Jun. 27, 2024, available at https://www.forbes.com/sites/caileygleeson/2024/06/26/alleged-chicago-area-4th-of-july-shooter-abruptly-rejects-plea-deal-will-face-trial-for-killing-7/.

(Continued…)

In certain cases, shooters leave manifestos or diaries that provide direct evidence of their influences, including their exposure to firearms marketing. *See, e.g.*, *Jones v. Mean LLC*, No. 810316/2023, Compl. ¶¶ 136–143 (N.Y. Sup. Ct. Erie Cnty. Aug. 15, 2023) (shooter's manifesto and Discord diary indicated that he intentionally "searched for a rifle with [the gun manufacturer's] [a]rms [l]ock in place");[18] *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL, 2d Am. Compl. ¶¶ 96–100, 105–107 (Cal. Sup. Ct. San Diego Cnty. July 22, 2021) (shooter revealed in his manifesto and post-attack 911 call that he believed that "he was a noble warrior defending a just cause, like the military and law enforcement referenced in gun manufacturer's marketing.").[19] But it is certainly not always the case that criminal actors will leave writings documenting their influences or motivations, or that the news media will report on it.

_____

[18] Everytown serving as plaintiff's counsel in case stemming from the May 2022 Buffalo mass shooting. Complaint available at https://everytownlaw.org/wp-content/uploads/sites/5/2023/08/2023.08.15-Complaint.pdf.

[19] Brady serving as plaintiffs' counsel in case stemming from the April 2019 Chabad of Poway mass shooting. Second amended complaint available at https://www.nssf.org/wp-content/uploads/2022/02/PlaintiffsSecondAmendedComplaint.pdf.

The district court's standard seemingly requires access to investigative files and a public manifesto describing the shooter's thought process. As the above cases show, the law and practice do not require access to such information when pleading. When evaluating whether Plaintiffs sufficiently pleaded their claims here, the Court should be mindful not to establish a rule that assumes that all meritorious claims will have access to the amount of information that certain heavily publicized cases receive.

## II.    The District Court Interpreted PLCAA's Predicate Exception So Narrowly as to Eliminate the Exception Altogether.

Although PLCAA prohibits lawsuits against certain gun-industry defendants [20] for harm resulting from third-party criminal misuse of firearms and ammunition, the statute sets forth several exceptions. 15 U.S.C. § 7903(5)(A). One exception, known as the "predicate exception," permits an action when the defendant knowingly violated "a State or Federal statute applicable to the sale or marketing of the

---

[20] Amici also agree with Plaintiffs that those Defendants who supplied the shooter with magazines are not entitled to PLCAA protection for that conduct in any event, because magazines are not "qualified products" under PLCAA. Appellants' Br. at 40-46.

[misused] product" that "was a proximate cause for the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).

Here, the district court improperly limited potential liability to defendants who *coerced* the shooter to commit a mass shooting. *See* Order at 6 ("*Maybe* defendants' advertising coerced Shooter to *purchase* defendants' products . . . but absent is any allegation that defendants' advertising coerced Shooter to attack the elementary school.") (emphasis in original). The district court concluded that these "deficiencies under Article III also doom plaintiffs' allegations of proximate cause" under PLCAA. *Id.* at 8. This extraordinarily narrow understanding of the predicate exception would effectively mean that virtually no one other than the person pulling the trigger could ever be liable for proximately causing a shooting. That scope of liability is inconsistent with the structure of PLCAA and governing law.

## A.    PLCAA Assumes That Gun Industry Members Can Be Held Liable for Gun Violence in Some Circumstances.

PLCAA applies to lawsuits "against a manufacturer or seller of a qualified product, or a trade association" for harm "solely caused" by third-party criminal misuse of firearm products. 15 U.S.C. § 7901(b)(1), § 7903(5)(A). PLCAA's design thus assumes that the defendants invoking

its protections will be manufacturers and dealers (not shooters). It therefore plainly contemplates that the harm may have been proximately caused by the gun industry's wrongful actions as well as the shooter's conduct, without any need for coercion. Or, in the words of one scholarly amicus:

> [T]he *only* lawsuits that are subject to PLCAA preemption are lawsuits for harm resulting from unlawful third-party misuse, and therefore if the predicate exception permits any lawsuits at all (and it must, otherwise it would be a nullity), then it must permit a subset of lawsuits in which the harm resulted from unlawful third-party misuse.

*Nat'l Shooting Sports Found. v. Att'y Gen. N.J.*, No. 23-1214, Dkt. No. 36, Amici Curiae Br. of Legal Scholars in Support of Defendant-Appellant at 15–16 (3d Cir. Apr. 7, 2023) (emphasis in original) (internal citation omitted). Consistent with that, courts have repeatedly permitted cases to proceed against non-shooters without a finding of coercion under the same PLCAA predicate exception Plaintiffs invoke here.

For example, in *Williams v. Beemiller, Inc.*, the gunshot victim plaintiff alleged that the manufacturer, distributor, and dealer of the gun used by the third-party shooter knowingly violated various federal and state statutes "by engaging in illegal gun trafficking and illegally selling the Hi-Point handgun." 952 N.Y.S.2d 333, 338 (N.Y. App. Div. 2012),

*opinion amended on reargument*, 962 N.Y.S.2d 834 (N.Y. App. Div. 2013). The New York appellate court allowed the suit to proceed under the predicate exception because a question of fact existed as to whether "it was reasonably foreseeable that supplying large quantities of guns for resale to the criminal market would result in the shooting of an innocent victim[.]" 962 N.Y.S.2d at 836.

Similarly, in *Soto v. Bushmaster Firearms Int'l, LLC*, the administrators of estates of elementary school students and faculty sued the manufacturers, distributors, and sellers of the assault rifle used by the third-party shooter to commit the Sandy Hook mass school shooting. 202 A.3d 262, 272–73 (Conn. 2019). They alleged that the defendants' "wrongful advertising magnified the lethality of the Sandy Hook massacre by inspiring [the shooter] or causing him to select a more efficiently deadly weapon for his attack." *Id.* at 290. The Connecticut Supreme Court allowed the claim to proceed under the predicate exception. *Id.* at 312. The court held that plaintiffs had adequately alleged that the defendants' "unethical" advertising proximately caused the injury suffered by the plaintiffs, who were direct victims of gun violence. *Id.* at 290–91 ("The most directly foreseeable harm associated

-19-

with such advertising is that innocent third parties could be shot as a result.").

And in *Brady v. Walmart Inc.*, the plaintiffs (surviving family members of the decedent) alleged that Walmart negligently sold a firearm to one of its employees suffering from a mental illness, who subsequently shot and killed himself. No. 8:21-CV-1412-AAQ, 2022 WL 2987078, at *1 (D. Md. July 28, 2022). The plaintiffs invoked the predicate exception, and the court allowed the suit to proceed. *Id.* at *6. The court found that the plaintiffs had sufficiently alleged that Walmart's sale of the firearm violated a Maryland law that prohibits the sale of firearms to individuals known to have a mental disorder and found that Walmart's unlawful gun sale proximately caused the decedent's suicide. *Id.* at *13–16 ("[The court] cannot determine, at this stage, drawing all inferences in Plaintiffs' favor, that [the decedent]'s suicide was not a foreseeable result of [Walmart's] alleged actions.").

Like here, all of these cases (and many others like them) involved suits against non-shooters brought by specific victims of gun violence and their families. And in all three of these cases, the courts allowed the case

to proceed under the predicate exception, without any reference to the notion of "coercion" that the district court introduced here.

## B. Governing Law Establishes That A Single Event Can Have Multiple Proximate Causes.

The courts' decisions in the cases above are consistent with general principles of tort law. It is black letter law that a harm can have multiple proximate causes. *See Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 (4th Cir. 1996) ("[A]n injury may have more than one proximate cause[.]"); Restatement (Third) of Torts: Phys. & Emot. Harm § 29 cmt. a (2010) (explaining that "[m]ultiple factual causes always exist . . . and multiple proximate causes are often present"). Here, the shooter's actions are not a "superseding" cause that would absolve Defendants of liability.

An intervening act only rises to the level of "superseding cause" when it "so entirely supplants" the original negligence that it causes the injury "without any contributing negligence by the initial tortfeasor in the slightest degree[.]" *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009). An act cannot be a superseding cause if it "was set in motion by the initial tortfeasor's negligence." *Id.* That is precisely what Plaintiffs have alleged here—that Defendants' conduct set in motion the ultimate harm. Proximate causation is therefore satisfied.

Finally, the district court suggested that proximate cause under PLCAA requires that Defendants intentionally caused the shooting. *See* Order at 10 ("those allegations do not allege proximate causation (defendants' advertisements intentionally caused Shooter's attack)."). Neither the predicate exception nor general principles of tort law contain any such intent requirement. PLCAA merely requires that Defendants "knowingly violated" the predicate statute. 15 U.S.C. § 7903(5)(A)(iii). And proximate causation does not generally require intent, instead turning on whether the harm was a foreseeable result of the conduct. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) ("Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct.").

The district court's reliance on intent in the foreseeability analysis was misplaced and would create extra-textual and wholly unjustified barriers to claims against defendants asserting PLCAA protection.

## CONCLUSION

For the reasons stated above and in Appellants' brief, Amici respectfully submit that the Court should reverse the dismissal of Plaintiffs' complaints.

Dated: November 4, 2024          Respectfully Submitted,

/s/ *Keith J. Harrison*
CROWELL & MORING LLP
Keith J. Harrison
Tiana Russell
Siyi Shen
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
   Phone: (202) 624-2500
   Fax: (202) 628-5116
   KHarrison@crowell.com
   TRussell@crowell.com
   SShen@crowell.com

Neil Nandi
455 N. Cityfront Plaza Drive
Suite 3600
Chicago, Illinois 60611
Phone: (312) 321-4200
   NNandi@crowell.com

Anne Li
Ellen M. Halstead
Two Manhattan West
375 Ninth Avenue
New York, New York 10001
Phone: (212) 223-4000
Fax: (202) 628-5116
   ALi@crowell.com
   EHalstead@crowell.com

*Counsel for Amici Everytown for Gun Safety Support Fund, Brady Center to Prevent Gun Violence, Giffords Law Center to Prevent Gun Violence, and Global Action on Gun Violence*

-23-

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation contained in Fed. R. App. P. 29(a)(5) because, excluding the portions exempted by Rule 32(f), this brief contains 5480 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Century Schoolbook.

/s/  *Keith J. Harrison*
Keith J. Harrison

## CERTIFICATE OF SERVICE

I certify that on November 4, 2024, I electronically filed the foregoing brief with the Clerk of Court for the U.S. Court of Appeals for the Fourth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Keith J. Harrison*
Keith J. Harrison