No. 24-1822

# In The United States Court of Appeals
# For the Fourth Circuit

KAREN LOWY, individually and as parent and next friend of N.T.; ANTONIO HARRIS,

*Plaintiffs-Appellants*,

– v. –

DANIEL DEFENSE, LLC; FAB DEFENSE, INC.; FAB MANUFACTURING & IMPORT OF INDUSTRIAL EQUIPMENT LTD.; BRAVO COMPANY USA, INC.; LOYAL 9 MANUFACTURING, LLC; FOSTECH, INC.; HEARING PROTECTION, LLC; CENTURION ARMS, LLC; MAGPUL INDUSTRIES CORP.; FEDERAL CARTRIDGE COMPANY; VISTA OUTDOOR, INC.; FIOCCHI OF AMERICA, INC.; FIOCCHI MUNIZIONI S.P.A.; SUREFIRE, LLC; TORKMAG, INC.,

*Defendants-Appellees,*

and

STARLINE, INC.; JOHN DOES 1-20,

*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA (No. 1:23-cv-01338-CMH-IDD)

## [CORRECTED] RESPONSE BRIEF FOR DEFENDANTS-APPELLEES

David H. Thompson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com

*Counsel for Defendants-Appellees Magpul Industries Corp. and SureFire, LLC*

*Additional Counsel listed on Inside Cover*

V.R. Bohman
Cameron J. Schlagel
SNELL & WILMER, LLP
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: (714) 427-7000
Facsimile: (714) 427-7799
vbohman@swlaw.com
cschlagel@swlaw.com

David C. Bowen
Forrest M. Via
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
dbowen@wilsav.com
fvia@wilsav.com

*Counsel for Defendant-Appellee
Daniel Defense, LLC*

Jeremy Adelson
HANSEN REYNOLDS LLC
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Telephone: (414) 326-4043
jadelson@hansenreynolds.com

Alan D. Bart
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, VA 23219-4068
Telephone: (804) 344-3400
abart@reedsmith.com

James B. Vogts
Andrew A. Lothson
SWANSON, MARTIN & BELL, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
Telephone: (312) 321-9100
alothson@smbtrials.com
jvogts@smbtrials.com

*Counsel for Defendants-Appellees
Vista Outdoor, Inc. and Federal
Cartridge Company*

David C. Bowen
Forrest M. Via
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
dbowen@wilsav.com
fvia@wilsav.com

Scott L. Braum
Timothy R. Rudd
BRAUM | RUDD

*Additional Counsel listed on Inside Cover*

Alan W. Nicgorski
HANSEN REYNOLDS LLC
150 S. Wacker Drive, 24th Floor
Chicago, Illinois 60606
(312) 265-2253
anicgorski@hansenreynolds.com

Charles E. James, Jr.
Meredith M. Haynes
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6529
cjames@williamsmullen.com
mhaynes@williamsmullen.com

Camden R. Webb
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Raleigh, North Carolina 27601
Telephone: (919) 981-4000
cwebb@williamsmullen.com

*Counsel for Defendant-Appellee
Bravo Company USA, Inc.*

Abram J. Pafford
Jonathan Y. Ellis
MCGUIREWOODS LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 857-1725
Facsimile: (202) 828-3350
apafford@mcguirewoods.com

Harley J. Goldstein, Esq.
Neha Khandhadia, Esq.
(admissions forthcoming)
111 West Washington Street
Suite 1221

812-C East Franklin Street
Dayton, Ohio 45459
Telephone: (937) 396-0089
Facsimile: (937) 396-1046
slb@braumrudd.com
trr@braumrudd.com

*Counsel for Defendants-Appellees
Loyal 9 Manufacturing, LLC d/b/a
Sons of Liberty Gun Works, FosTech,
Inc., and Centurion Arms, LLC*

Nicholas P. Vari
Andrew N. Cook
K&L GATES, LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-8365
Nicholas.Vari@klgates.com
Andrew.Cook@klgates.com

*Counsel for Defendants-Appellees
Fiocchi of America, Inc. and Fiocchi
Munizioni S.p.A.*

Christopher Renzulli
David A. Jones
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
crenzulli@renzullilaw.com
djones@renzullilaw.com

*Counsel for Defendants-Appellees
Hearing Protection, LLC and
Torkmag, Inc.*

*Additional Counsel listed on Inside Cover*

Chicago, Illinois 60602
Telephone: (312) 337-7700
harleyg@goldmclaw.com
nehak@goldmclaw.com

*Counsel for Defendants-Appellees FAB
Manufacturing & Import of Industrial
Equipment Ltd. and FAB Defense, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................... iii

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ................................................................ 2

STATEMENT OF THE ISSUES .................................................................... 3

STATEMENT OF THE CASE ........................................................................ 3

SUMMARY OF THE ARGUMENT .............................................................. 6

STANDARD OF REVIEW ............................................................................. 9

ARGUMENT ................................................................................................. 10

I.      Plaintiffs Lack Article III Standing. ............................................... 10

II.     The Complaint Fails to Allege Proximate Causation Under Both Federal
        and Virginia Law ............................................................................. 18

        A.      Plaintiffs Fail to Plead Proximate Cause Under Federal Law ............. 18

        B.      Plaintiffs Fail to Plead Proximate Cause Under Virginia Law ........... 25

III.    Plaintiffs' Other PLCAA Arguments Fail ....................................... 30

        A.      Plaintiffs Incorrectly Assert That They Satisfy the Other
                Requirements of the Predicate Exception. ........................... 30

                1.      Defendants did not "knowingly" violate any statutes ................ 30

                2.      None of the underlying statutes is "applicable" to the "sale or
                        marketing" of firearms. ................................................. 33

        B.      Magazines Are "Qualified Products" Protected By the PLCAA ....... 35

        C.      Plaintiffs Cannot Change Course and Argue that Magpul and
                SureFire Fail to Meet the Definition of a "Manufacturer or Seller." ..39

i

D.      Plaintiffs Cannot Bootstrap the Rest of Their Case to a Single
        Valid Cause of Action. ............................................................... 41

IV.   The First Amendment Prohibits Liability for Defendants' Pro-Firearm
      Speech. ................................................................................................ 43

V.    The District Court Did Not Commit Any Procedural Errors. ...................... 52

CONCLUSION ............................................................................................. 54

# TABLE OF AUTHORITIES

**Cases**            **Page**

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996)................................................................46, 47, 49

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)................................................................51

*A.H. v. Rockingham Publ'g Co.*,
    255 Va. 216 (1998) ................................................................25, 26

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*,
    59 F.4th 948 (8th Cir. 2023)................................................13

*Alvarez v. Becerra*,
    No. 21-2317, 2023 WL 2908819 (4th Cir. Apr. 12, 2023) ............16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................9, 13, 15

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. N.J. Att'y Gen.*,
    910 F.3d 106 (3d Cir. 2018)................................................38

*Bank of Am. Corp. v. City of Miami*,
    581 U.S. 189 (2017)................................................................19, 20

*Beale v. Jones*,
    210 Va. 519 (1970) ................................................................25, 29

*Bennett v. Spear*,
    520 U.S. 154 (1997)................................................................10, 11, 14, 16

*Brady v. Walmart, Inc.*,
    No. 8:21-cv-1412-AAQ, 2022 WL 2987078
    (D. Md. July 28, 2022) ................................................................23, 24, 43

*Brandenburg v. Ohio*,
    395 U.S. 444 (1969)................................................................45

*Burson v. Freeman*,
    504 U.S. 191 (1992)................................................................51

*California v. Texas*,
    593 U.S. 659 (2021)................................................................6, 7, 10

*Carey v. Population Servs. Int'l*,
    431 U.S. 678 (1977)................................................................49

iii

*Chapman v. Commonwealth*,
    68 Va. App. 131 (2017).................................................................28

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004).......................................................24

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)..............................................................46, 47

*City of New York v. Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)...................................................33, 34

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002).......................................................24

*Connell's Ex'rs v. Chesapeake & Ohio Ry. Co.*,
    93 Va. 44 (1896)...................................................................25, 26

*Counterman v. Colorado*,
    600 U.S. 66 (2023)................................................................44, 45

*Crowell v. Benson*,
    285 U.S. 22 (1932).....................................................................52

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019)........................................................14, 15, 16

*District of Columbia v. Beretta U.S.A. Corp.*,
    872 A.2d 633 (D.C. 2005) .........................................................24

*Doe v. Va. Dep't of State Police*,
    713 F.3d 745 (4th Cir. 2013)......................................................10

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    91 F.4th 511 (1st Cir. 2024) ...................................................22, 23

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
    No. 23-1141 (U.S.) ....................................................................22

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)............................................................10, 17

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009)........................................................9

*Friends for Ferrell Parkway, LLC v. Stasko*,
    282 F.3d 315 (4th Cir. 2002).......................................................10

*Fyock v. City of Sunnyvale*,
    25 F. Supp. 3d 1267 (N.D. Cal. 2014)..........................................38

*Gallimore v. Commonwealth*,
246 Va. 441 (1993) ...............................................................27, 28

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)........................................................................43

*Gross v. FBL Fin. Servs., Inc.*,
557 U.S. 167 (2009)........................................................................35

*Hall v. Hall*,
584 U.S. 59 (2018).........................................................................20

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017)....................................................48

*Hawkins v. Commonwealth*,
64 Va. App. 650 (2015)...................................................................28

*Hays v. Hoffman*,
325 F.3d 982 (8th Cir. 2003) ..........................................................41

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992)...........................................................19, 20, 21

*Howell ex rel. Goerdt v. Tribune Entertainment Co.*,
106 F.3d 215 (7th Cir. 1997)............................................................2

*Ileto v. Glock, Inc.*,
565 F.3d 1126 (9th Cir. 2009)..............................21, 22, 33, 40, 41

*In re Academy, Ltd.*,
625 S.W.3d 19 (Tex. 2021) ........................................................36, 37

*James v. Meow Media, Inc.*,
300 F.3d 683 (6th Cir. 2002)..............................................44, 51, 52

*Kansas v. UtiliCorp United, Inc.*,
497 U.S. 199 (1990)....................................................................19, 20

*Kashdan v. George Mason Univ.*,
70 F.4th 694 (4th Cir. 2023)........................................................13, 14

*Kemper v. Deutsche Bank AG*,
911 F.3d 383 (7th Cir. 2018)...........................................................20

*Langford v. Joyner*,
62 F.4th 122 (4th Cir. 2023)........................................................17, 18

*Lee v. Airgas Mid-South, Inc.*,
793 F.3d 894 (8th Cir. 2015)............................................................2

*Levenson v. Commonwealth*,
    68 Va. App. 255 (2017)......................................................................28, 29

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)...................................................................21, 24, 28

*Linmark Associates, Inc. v. Willingboro Twp.*,
    431 U.S. 85 (1977)........................................................................46

*Liparota v. United States*,
    471 U.S. 419 (1985).......................................................................31, 32

*Lorillard Tobacco Co. v. Reilly*,
    533 U.S. 525 (2001).......................................................................48

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................10

*Maroulis v. Elliott*,
    207 Va. 503 (1966) ........................................................................25

*McCleary-Evans v. Md. Dep't of Transp.*,
    780 F.3d 582 (4th Cir. 2015)........................................9, 12, 13, 15

*McCullen v. Coakley*,
    573 U.S. 464 (2014).......................................................................51

*Microsoft Corp. v. AT&T Corp.*,
    550 U.S. 437 (2007).......................................................................35

*Minnesota v. Fleet Farm LLC*,
    679 F. Supp. 3d 825 (D. Minn. 2023) ...........................................43

*Murthy v. Missouri*,
    603 U.S. 43 (2024)...............................................7, 10, 14, 15, 17

*NAACP v. Button*,
    371 U.S. 415 (1963).......................................................................50

*Nalendla v. WakeMed*,
    24 F.4th 299 (4th Cir. 2022)...........................................................13

*NLRB v. Cath. Bishop of Chi.*,
    440 U.S. 490 (1979).......................................................................52

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    597 U.S. 1 (2022)..........................................................................38

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964).......................................................................44, 47, 48

vi

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989)........................................................................2

*Prescott v. Slide Fire Sols., LP*,
341 F. Supp. 3d 1175 (D. Nev. 2018) ...........................................37

*Prescott v. Slide Fire Sols., LP*,
410 F. Supp. 3d 1123 (D. Nev. 2019) ...........................................43

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992)......................................................................49

*Recht v. Morrisey*,
32 F.4th 398 (4th Cir. 2022).........................................................46

*Rehaif v. United States*,
588 U.S. 225 (2019)................................................................30, 31

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988)..................................................................8, 48

*Robinson v. Equifax Info. Servs., LLC*,
560 F.3d 235 (4th Cir. 2009).........................................................39

*Robinson v. Matt Mary Moran, Inc.*,
259 Va. 412 (2000) .................................................................26, 27

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2009)................................................................41, 42

*Ruan v. United States*,
597 U.S. 450 (2022)......................................................................31

*S. Pacific Co. v. Darnell-Taenzer Lumber Co.*,
245 U.S. 531 (1918)......................................................................24

*Saudi v. Northrop Grumman Corp.*,
427 F.3d 271 (4th Cir. 2005)....................................................53, 54

*Scottsdale Ins. Co. v. Subscription Plus, Inc.*,
299 F.3d 618 (7th Cir. 2002).........................................................20

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018)...........................................19, 20, 22

*Smith v. McLaughlin*,
289 Va. 241 (2015) .......................................................................29

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024)..........................................................40

*Soto v. Bushmaster Firearms Int'l*,
    331 Conn. 53 (2019) ........................................................................24

*Steward ex rel. Steward v. Holland Fam. Props., LLC*,
    284 Va. 282 (2012) ........................................................................29

*Stewart v. Hall*,
    770 F.2d 1267 (4th Cir. 1985)........................................................39

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................17

*Tyler v. Commonwealth*,
    75 Va. App. 218 (2022) ..............................................................28, 29

*United States ex rel. Drakeford v. Tuomey*,
    792 F.3d 364 (4th Cir. 2015)..........................................................44

*United States ex rel. Merena v. SmithKline Beecham Corp.*,
    205 F.3d 97 (3d Cir. 2000) ............................................................41

*United States v. Alvarez*,
    567 U.S. 709 (2012)....................................................................51, 52

*United States v. Gonzalez*,
    792 F.3d 534 (5th Cir. 2015)........................................................35, 36

*United States v. Miselis*,
    972 F.3d 518 (4th Cir. 2020)..........................................................45

*United States v. Stevens*,
    559 U.S. 460 (2010)....................................................................44, 49

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)....................................................................46, 47

*Wahi v. Charleston Area Med. Ctr., Inc.*,
    562 F.3d 599 (4th Cir. 2009)........................................................39, 52

*Wang ex rel. United States v. FMC Corp.*,
    975 F.2d 1412 (9th Cir. 1992) ........................................................41

*Waters v. Merchs'. Louisville Ins. Co.*,
    36 U.S. 213 (1837)..........................................................................28

*Williams v. Beemiller, Inc.*,
    100 A.D.3d 143 (N.Y. App. Div. 2012)..........................................43

*Williams v. Kincaid*,
    45 F.4th 759 (4th Cir. 2022)............................................................9

viii

## Statutes

15 U.S.C.

§ 7901(a)(7) ...............................................................21, 22
§ 7901(a)(8) ...................................................................21
§ 7901(b)(1) ....................................................21, 42, 43
§ 7902(a) ..........................................................................18
§ 7903(4) .............................................................35, 36, 37
§ 7903(5) ....................................................................18, 41
§ 7903(5)(A) ..........................................................5, 36, 37
§ 7903(5)(A)(ii) ......................................................6, 19, 42
§ 7903(5)(A)(iii) .....................................6, 8, 19, 30, 33
§ 7903(5)(A)(iv) ....................................................... 8, 42

18 U.S.C. § 923(a) ...............................................................40

27 C.F.R. §§ 478.39(a), (c)(18) ...................................36, 39

Fed. R. App. P. 28(a)(8) ...............................................52, 53

Va. Code Ann.

§ 18.2-216 ...........................................................................4
§ 18.2-216(A) .....................................................................34
§ 59.1-68.3 ..........................................................................28
§ 59.1-196 .............................................................................4
§ 59.1-198 ..........................................................................34
§ 59.1-200(A) ....................................................................34
§ 59.1-204 ..........................................................................28

## Other Authorities

*Applicable*, Merriam-Webster, https://bit.ly/4a3lrsx
(last visited Jan. 3, 2025) .................................................33

*Applicable*, *Black's Law Dictionary* (6th ed. 1990)................33

*Component*, *Constituent*, *Part*, Webster's New International Dictionary
(2d ed. 1944)........................................................................35

Dan B. Dobbs, The Law of Torts (2000)................................19

Duncan Long, The AR-15/M16: A Practical Guide (1985).............36

Restatement (Second) of Torts (Am. L. Inst. 1965)................20

ix

# INTRODUCTION

The district court correctly dismissed this case because Plaintiffs failed to plead that Defendants' speech caused Plaintiffs' injuries. Plaintiffs never alleged facts to support the conclusion that the shooter who perpetrated the horrible crime that injured Plaintiffs saw any (let alone all) of Defendants' supposedly offending posts, much less that Defendants' speech actually influenced anything that the shooter did. With no facts pleaded to establish a causal connection between Defendants' speech and the actions of the shooter, Plaintiffs cannot establish Article III standing, cannot get past the Protection of Lawful Commerce in Arms Act ("PLCAA"), and cannot plead a cause of action under Virginia law. And even if Plaintiffs could overcome all those deficiencies, the First Amendment independently bars their claims since they seek to impose liability based on Defendants' promotion of lawful products and other pro-gun speech. The shooting that caused Plaintiffs' injuries was a terrible crime, but bedrock legal principles cannot be discarded to expand liability beyond the perpetrator. The district court correctly applied settled law in holding that Plaintiffs' claims fail at the threshold. This Court should affirm.

## JURISDICTIONAL STATEMENT

This Court lacks subject-matter jurisdiction; as the district court correctly held, Plaintiffs failed to establish Article III standing in their complaint.[1] J.A.331. Although the district court did not reach it, there is also a second jurisdictional defect that requires dismissal: as Defendants argued in the district court, the complaint does not plead complete diversity. *See* S.A.32. The *named* parties are diverse, but the complaint also includes claims against twenty John Doe defendants whose citizenship is unknown. J.A.36; J.A.124. The general rule is that "'John Doe' defendants are not permitted in federal diversity suits," *Howell ex rel. Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997), and no exception to that general rule applies, *see id.*; *Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 899 (8th Cir. 2015). Plaintiffs acknowledged this jurisdictional defect below, S.A.51, but they took no affirmative steps to cure it by either amending the complaint to drop the John Doe defendants or moving to dismiss them under Rule 21. Because Plaintiffs were afforded an opportunity to fix the jurisdictional defect in the district court but chose not to do so, this Court should not bail them out on appeal. *See Newman Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836–37 (1989) (the power to dismiss nondiverse parties on appeal should be used "sparingly").

---

[1] There are two complaints here that were consolidated below. The allegations in the complaints are materially identical. Like Plaintiffs' brief, this brief cites to the *Lowy* complaint and refers to it in the singular.

## STATEMENT OF THE ISSUES

1. Whether the district court correctly held that Plaintiffs lack standing because they failed to show that their injuries are "fairly traceable" to Defendants' speech.

2. Whether the district court correctly held that Plaintiffs failed to plead proximate causation under the PLCAA's exceptions and separately under Virginia law because their injuries were too attenuated from Defendants' speech.

3. Whether the district court correctly rejected Plaintiffs' various attempts to avoid the PLCAA.

4. Whether penalizing Defendants for their speech would violate the First Amendment.

5. Whether the district court should have granted leave to amend without Plaintiffs filing a motion or made other procedural errors.

## STATEMENT OF THE CASE

This case involves a terrible crime, and responsibility for that crime falls on Raymond Spencer (the "Shooter"). While living in Virginia, the Shooter lawfully purchased firearms, firearm parts, and ammunition, some of which were allegedly manufactured by the fifteen Defendants in these consolidated cases. The Shooter illegally transported these firearms and components to an apartment he rented in Washington, D.C., that overlooked a school. J.A.31; J.A.82. On April 22, 2022, he opened fire just before students were dismissed. J.A.82. After a brief manhunt, the

Shooter killed himself. J.A.29. Mercifully, he was the only person who died that day. But Plaintiff Karen Lowy was seriously injured. J.A.29. Lowy's minor daughter, N.T., was inside the school when the shooting occurred and was not physically harmed. J.A.29. Antonio Harris, a security guard at the school, was also seriously injured. J.A.117.

Lowy and Harris brought this suit seeking compensation from Defendants for injuries inflicted by the Shooter—a third party not before the Court. J.A.29–30; J.A.116. Plaintiffs do not contend that the Shooter's purchases of the firearms and components he owned violated any statute, ordinance, or common-law rule. J.A.31–33. Nor do they allege that any Defendant knew or should have known anything about the Shooter whose crimes caused Plaintiffs' injuries. Instead, they allege that Defendants' speech promoting their lawful products, including social-media posts, incited the Shooter's actions. J.A.40–42. According to Plaintiffs, pictures of military and police using Defendants' products somehow implied false statements about their quality and appropriate civilian uses, and those implied false statements make Defendants legally responsible for the Shooter's heinous acts. J.A.58–61. The complaint alleges violations of Virginia's False Advertising Statute ("VFAS") and the Virginia Consumer Protection Act ("VCPA"). *See* VA. CODE ANN. § 18.2-216; *id.* §§ 59.1-196 *et seq.* Plaintiffs also sued some Defendants for negligence *per se* for alleged (but unspecified) violations of the National Firearms Act ("NFA") and

4

Virginia's Uniform Machine Gun Act ("UMGA"), as well as negligence under Virginia law. J.A.110–114.

The *Lowy* and *Harris* cases were consolidated, and Defendants moved to dismiss on a variety of grounds, including failure to adequately plead Article III standing, the PLCAA's bar against lawsuits seeking to hold firearms manufacturers liable for the unlawful acts of third parties, failure to adequately plead proximate cause under Virginia law, and preemption by the First Amendment. After extensive briefing, the district court dismissed all counts against all Defendants.

The district court first concluded that Plaintiffs failed to establish Article III standing. Even accepting the allegations as true, the court held that Plaintiffs failed to plausibly allege that Defendants' speech caused their injuries. Plaintiffs did not allege that the Shooter was exposed to Defendants' speech, much less that it had a "determinative or coercive" effect on his horrific actions; instead, Plaintiffs simply speculated that the Shooter must have viewed all Defendants' speech, while not alleging any facts that would support that implausible assumption. J.A.330–332.

The district court further held that, Article III aside, Plaintiffs' claims are barred by the PLCAA. The PLCAA preempts suits against firearm industry members seeking "damages, punitive damages, … or other relief, resulting from the criminal or unlawful misuse of [firearms and related products] by … a third party." 15 U.S.C. § 7903(5)(A). As the court explained, Plaintiffs' suit falls squarely within that

prohibition, J.A.332–333, and no PLCAA exception saves it. While the PLCAA has an exception for "knowing[]" statutory violations that "proximate[ly] cause … the harm for which relief is sought," that exception applies only when the violation was a "proximate cause" of the plaintiff's injuries. 15 U.S.C. § 7903(5)(A)(iii). The court concluded that Plaintiffs failed to plausibly allege that the supposed marketing violations proximately caused their injuries. J.A.334–336. And it concluded that their attempt to shoehorn their case into the PLCAA's "negligence per se" exception, 15 U.S.C. § 7903(5)(A)(ii), failed as well because Plaintiffs had not pleaded proximate cause under the PLCAA or Virginia law. J.A.337.

The district court thus dismissed all counts against all Defendants.[2] J.A.337. Plaintiffs appealed without seeking leave to amend.

## SUMMARY OF THE ARGUMENT

I.    The district court correctly dismissed Plaintiffs' claims for lack of Article III standing. Plaintiffs failed to satisfy the "difficult" burden of showing that their injuries, which were directly and proximately caused by a third party, are fairly traceable to any conduct of any Defendant. *See California v. Texas*, 593 U.S. 659,

---

[2] Vista Outdoor, Inc., Fiocchi of America, Inc., Fiocchi Munizioni S.p.A., and FAB Manufacturing also moved to dismiss Plaintiffs' claims against them under FED. R. CIV. P. 12(b)(2) based on lack of personal jurisdiction. The District Court did not rule on these challenges in its dismissal order. By urging affirmance in this appeal, these Defendants expressly do not waive their right to request dismissal based on lack of personal jurisdiction.

692–93 (2021). Plaintiffs alleged nothing whatsoever to bridge the gap between Defendants' speech and the many illegal acts of the Shooter who actually injured them. Indeed, Plaintiffs did not even plausibly allege that the Shooter saw any Defendant's speech or even had an account on any of the social-media platforms on which Defendants spoke. They instead proceed on the assumption that the Shooter must have seen virtually any online post concerning the many firearm and firearm-related products he owned, which is not a plausible allegation on its face. Plaintiffs likewise did not (and cannot) allege that any Defendant's speech coerced, determinatively effected, or otherwise would have pressured the Shooter to commit his crimes even if he had seen it. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024). The district court thus correctly held that Plaintiffs lack Article III standing, as they have not plausibly alleged that their injuries are fairly traceable to Defendants' speech.

II.    Even if Plaintiffs had standing, the district court correctly concluded that their failure to plead proximate cause defeats their claims. Plaintiffs cannot shoehorn their claims into the PLCAA's narrow exception for knowing statutory violations that proximately cause a plaintiff's injuries, as Plaintiffs came nowhere close to pleading proximate cause. Plaintiffs' effort to invoke the PLCAA's negligence *per se* exception fails too, as Plaintiffs admit that the proximate-cause analysis is identical. And even apart from Article III and the PLCAA, Plaintiffs failed

to state a claim under Virginia law because the complaint's threadbare allegations come nowhere close to satisfying Virginia's proximate cause standard.

III.    Plaintiffs' hodgepodge of arguments trying to evade the PLCAA fail. Even if Plaintiffs did adequately plead proximate cause, they still cannot invoke the predicate exception because they did not plead a "knowing[]" violation of a statute "applicable" to the sale and marketing of firearms. 15 U.S.C. § 7903(5)(A)(iii). And while Plaintiffs argue that some Defendants cannot invoke the PLCAA because magazines they manufacture are not "component part[s]" of firearms, *id.* § 7903(4), that interpretation contradicts the text, structure, and purpose of the PLCAA. Finally, Plaintiffs' argument that some Defendants do not have proper licenses to invoke the PLCAA was forfeited below and is incorrect in any event.

IV.    Plaintiffs' claims also run afoul of the First Amendment. Plaintiffs seek to impose liability based on the content and viewpoint of Defendants' speech. But the First Amendment precludes such efforts except in rare cases when the speech at issue falls into an unprotected category, e.g., fighting words. In the district court, Plaintiffs tried to evade that bedrock constitutional protection by arguing that some of the alleged speech was at least partially commercial. But the protections for *non*-commercial speech apply when non-commercial and commercial speech are "inextricably intertwined." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988). Such is the case here: Much of the speech that Plaintiffs single out

8

for opprobrium is not remotely commercial. And even if the commercial-speech doctrine applied, that would not save Plaintiffs' claims because they are attempting to impose liability for the advocacy aspects of the speech, not any commercial ones.

V.     The district court did not err in failing to sua sponte grant leave to file an amended complaint, and the issue has now been waived regardless. Nor did the court improperly dismiss FAB Manufacturing, which properly moved to dismiss.

## STANDARD OF REVIEW

Dismissals under Rules 12(b)(1) and 12(b)(6) are reviewed *de novo*. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Conclusory factual allegations, requiring "speculation [to] fill the gaps," must be disregarded. *McCleary-Evans v. Md. Dep't. of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015). Where the facts that are well-pleaded in a nonconclusory manner "do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

# ARGUMENT

## I.  Plaintiffs Lack Article III Standing.

Plaintiffs seek compensation for injuries inflicted on them not by any Defendant, but by a criminal who perpetrated a horrific crime. This case thus fails at the threshold. Article III requires more than just an injury; it demands "a causal connection between the injury and the conduct complained of" to hold a specific defendant liable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). This "causation requirement" "screens out plaintiffs who were not injured *by the defendant's* action[s]" and "is central to Article III standing." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (emphasis added).

"[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party"—as is undeniably the case here—it is "substantially more difficult" "to establish" standing. *California*, 593 US. at 675 (quoting *Lujan*, 504 U.S. at 562). After all, it is a "bedrock principle" that plaintiffs lack standing when their injuries are not "fairly traceable to the challenged conduct" of any of the defendants they chose to sue, but instead "result[] from the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (citation omitted); *accord Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002); *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755–56 (4th Cir. 2013) (collecting cases). To survive a motion to dismiss in such a case, the plaintiff

must plead sufficient facts to plausibly allege that each defendant's alleged conduct had "determinative or coercive effect upon the action of" the third party. *Bennett v. Spear*, 520 U.S. 154, 169 (1997).

Plaintiffs fall short of this requirement. Their theory of causation is essentially as follows: Defendants advertised their products in a way that made them appear attractive to young men and that emphasized their utility in tactical situations; Defendants' posts induced the Shooter not only to purchase their products, but to commit a heinous act of mass violence; that act in turn harmed Plaintiffs. *See* J.A.40–41; J.A.81; J.A 330. That theory fails on its own terms, as it relies on the independent and unlawful conduct of a third party. But even if such an attenuated theory could work in the abstract, Plaintiffs failed to allege sufficient facts to plausibly tie Defendants' conduct to the Shooter's crime, and thus to Plaintiffs' injuries.

A. Plaintiffs claim that Defendants' marketing "worked as intended on the Shooter." J.A.80. But social-media posts can affect a person *only if he sees them*. And Plaintiffs alleged no facts that plausibly support an inference that the Shooter saw any, let alone all, of the posts Plaintiffs challenge by all of the various Defendants.

To be sure, "Plaintiffs identified specific" so-called "advertisements that Defendants published and promoted," Appellants' Opening. Br. at 25, ECF No. 64 (App. Br.), but Defendants are not the ones who opened fire on a school. For this

11

lawsuit to proceed, Plaintiffs must connect Defendants' alleged conduct to the Shooter. The <u>first</u> step in doing so is plausibly alleging that the Shooter saw the challenged posts. Yet Plaintiffs did not even do that. Nearly all the speech Plaintiffs identified in their complaint are posts on Instagram, Facebook, and X (formerly Twitter). *See* J.A.40–76. Plaintiffs did not allege that the Shooter even had an account on those platforms (or on any other social-media platform). Nor did they provide any reason to believe that he did. Indeed, the only websites to which Plaintiffs connect the Shooter are Wikipedia and Reddit. *See* J.A.80 & nn.20–21. But Plaintiffs do not claim that any Defendant posted anything (let alone anything unlawful) on either of those sites.

Plaintiffs' allegation that the Shooter used "a number of [online] retailers," which they say "expos[ed]" him to the various posts they challenge, J.A.81, does not bridge the gap. Plaintiffs did not identify which online retailers they believe the Shooter visited; nor did they allege that any particular Defendant made any particular post on any particular website the Shooter visited. Once again, Plaintiffs simply assume that the Shooter must have seen all posts relevant to all Defendants' products on any online retail site on which they were sold, simply because he owned those products. That is not a remotely plausible assumption.

At best, Plaintiffs' conclusory allegations are "*consistent* with" the possibility that the Shooter saw some of Defendants' speech (though not necessarily the specific

posts discussed in the complaint). *McCleary-Evans*, 780 F.3d at 586. But Rule 12 requires "more than a sheer possibility." *Iqbal*, 556 U.S. at 678. And Plaintiffs provided no facts from which a court could plausibly infer that the Shooter viewed any of the speech Plaintiffs challenge, or any other post by any Defendant. Indeed, the facts alleged strongly suggest that the Shooter was *not* on these social-media platforms: Given the public nature of social-media pages and Plaintiffs' extensive knowledge of the Shooter's "online presence," J.A.81, the total absence of any concrete allegations that the Shooter ever visited any Defendant's social-media page is "conspicuous[]" to say the least. *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022). Simply put, Plaintiffs fall far "short of the line between possibility and plausibility." *McCleary-Evans*, 780 F.3d at 586 (quoting *Iqbal*, 556 U.S. at 678).

It makes no difference that Plaintiffs' allegations were made "upon information and belief." *See* App. Br. 24. Even "information and belief" allegations must be based on *some* well-pleaded factual information. *See Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023) (affirming dismissal of claim where plaintiff's "information and belief" allegations were "not supported by any well-pled facts that exist independent of his legal conclusions" (quotation marks omitted)); *see also Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023) (collecting cases). And Plaintiffs failed to clear that bar. Their complaint does not contain a single factual allegation plausibly connecting Defendants' speech to

13

the Shooter. Without any well-pleaded factual allegations that the Shooter actually viewed any of the speech they challenge, Plaintiffs cannot show that Defendants' speech had any influence on the Shooter. *See Kashdan*, 70 F.4th at 701.

B. Even if Plaintiffs had plausibly alleged that the Shooter saw the challenged posts (which they did not), their allegations still do not show that those posts had a "determinative" effect on the Shooter's decision to attempt a mass shooting. *See Bennett*, 520 U.S. at 169. Indeed, as the district court aptly observed, "viewed most optimistically, plaintiffs allege that Shooter relied on defendants' advertisements when choosing to purchase defendants' products," but they failed to connect the purchase to the decision to commit the shooting. J.A.331. And without establishing that the posts played a determinative role in whether the shooting took place, Plaintiffs cannot establish "*de facto* causality" required under the traceability prong. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) (quotation marks omitted).

In fact, Plaintiffs' own allegations refute that claim. Plaintiffs alleged that "the Shooter was exposed to and influenced by Defendants' deceptive and unfair marketing acts and practices *while researching and planning the Shooting*." J.A.81 (emphasis added). Their theory thus is not that the Shooter saw the posts and was inspired by them to commit atrocities; it is that he saw these posts *while already planning the shooting*. But if the decision to engage in criminal acts was made before

14

the posts allegedly reached his eyes, then the posts could not have caused the shooting even if he did see them.[3] *Cf. Murthy,* 603 U.S. at 61 (holding that plaintiff was required to make "threshold showing" that "a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic") (emphasis in original).

Plaintiffs contend that *Department of Commerce v. New York* obviated the need to show that a defendant's conduct had a "determinative" effect on the third party who directly caused the alleged injuries. *See* App. Br. 27–31. They are wrong. *Department of Commerce* focused on "predictability" only because it was a forward-looking case in which the plaintiffs sought an injunction against anticipated future government action; it did not supplant the determinative-effect test. No injury had yet occurred, so the Court necessarily had to *predict* whether it was reasonably likely that the defendants' planned actions would harm the plaintiffs. Further, the question *Department of Commerce* actually asked was whether it was "predictable" that the

---

[3] Plaintiffs' allegations in paragraphs 117 and 122 fare no better. There, Plaintiffs speculate that Defendants' marketing led the Shooter to refer to himself as "an AR-15 aficionado on Wikipedia" and that the Shooter "was exposed to Defendants' products and advertisements in a variety of forums." J.A.80–81 (quotation marks omitted). At best, such speculation is "consistent with" the possibility that Shooter may have seen some of Defendants' advertising and thus still leaves Plaintiffs "short of the line between possibility and plausibility." *McCleary-Evans*, 780 F.3d at 586 (quoting *Iqbal*, 556 U.S. at 678). Regardless, there is still no plausible causal link between the Shooter seeing those posts and committing the criminal acts that injured Plaintiffs.

future federal action there would have *a determinative effect* on a sufficient number of noncitizen households to injure the plaintiff states. 588 U.S. at 766–68. Not one word in the Court's opinion so much as hints that the Court thought it was upsetting decades of settled precedent requiring a determinative effect. On the contrary, the Court not only reiterated its "steady refusal to 'endorse standing theories that rest on speculation about the decisions of independent actors,' " *id.* at 768 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)), but followed its discussion of "predictable effects" by invoking a 40-year-old D.C. Circuit opinion written by then-Judge Scalia for the long-settled proposition that Article III demands "*de facto* causality,*" id.*—i.e., a determinative effect.

That explains why this Court had no trouble four years after *Department of Commerce* applying the rule that "where multiple actors are involved, a plaintiff can establish causation only if the defendant's conduct had a 'determinative or coercive effect upon the action of someone else.' " *Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023) (unpublished) (quoting *Bennett*, 520 U.S. at 169). Plaintiffs did not and cannot identify any plausible basis to find that any (let alone every) Defendants' promotion of their lawful products had such a strong impact on the Shooter's decision to open fire on innocent people.

Moreover, even if the predictability of the injury were relevant to the standing inquiry, it is not remotely predictable that the Shooter would react to pro-firearm

16

social-media posts by attacking a school.[4] At the time the posts were made, it would have been far "too speculative" to predict that some unknown person would react so irrationally as to "likely injure the plaintiffs." *All. for Hippocratic Med.*, 602 U.S. at 383. This is the paradigmatic case where it was "not sufficiently predictable" at the time to impose post-hoc liability. *Id.*

C. Plaintiffs' standing theory fails for an additional reason. Because standing is not dispensed in gross, *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), each Plaintiff must satisfy Article III standing for each claim against each Defendant, *see Murthy*, 603 U.S. at 61. Yet Plaintiffs make no effort to explain how they have established traceability as to each Defendant individually, based on any particular speech by a specific Defendant. Instead, they lump all Defendants together and treat them as an undifferentiated whole that collectively caused the Shooter to commit crimes simply because they all said things on the internet that Plaintiffs find objectionable. But Defendants are distinct entities that are not in privity with each other; standing to sue one would not give standing to sue all. *See id.*

As this Court has explained, mere "collective allegations" that fail to identify how "each individual Defendant personally interacted" with the plaintiff are insufficient to plead the causation necessary for traceability. *Langford v. Joyner*, 62

---

[4] This is evidenced by the fact that more than 22,000 people liked one of the posts Plaintiffs challenge, *see* J.A.70–71, yet the complaint contains no allegations that any of those people did something remotely similar to what the Shooter did.

F.4th 122, 125 (4th Cir. 2023). Yet collective allegations are all Plaintiffs have. To be sure, Plaintiffs discuss posts from particular Defendants. But nothing in their complaint connects any particular post to the Shooter. Plaintiffs instead proceed on the theory that all Defendants *should* be held responsible for the Shooter's acts simply because they engaged in speech about lawful products that Plaintiffs dislike, regardless of whether they can connect any of it to the Shooter. Article III demands more.

## II.    The Complaint Fails to Allege Proximate Causation Under Both Federal and Virginia Law.

Even if this Court concludes that the allegations in the complaint inch over the traceability line, Plaintiffs immediately run into other causation problems. Most importantly, Plaintiffs' main theories of liability must satisfy the PLCAA's "predicate" exception and "negligence *per se*" exception to proceed. Both exceptions require a showing of proximate cause under federal law. Separately, Plaintiffs' underlying state law causes of action require proximate cause under Virginia law. Plaintiffs fail to allege facts that satisfy the federal and state proximate causation standards, so the district court was correct to dismiss their claims.

### A.    Plaintiffs Fail to Plead Proximate Cause Under Federal Law.

The PLCAA generally prohibits lawsuits against manufacturers and sellers of firearms, ammunition, and component parts of firearms based on the criminal or unlawful actions of third parties. *See* 15 U.S.C. §§ 7902(a), 7903(5). To avoid the

18

PLCAA, Plaintiffs attempt to squeeze their claims into two exceptions to the statute's broad grant of immunity. First is the so-called "predicate exception," which permits otherwise barred claims to proceed if the defendant "knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." *Id.* § 7903(5)(A)(iii). Second, Plaintiffs invoke the "negligence *per se*" exception, which permits claims when a statute sets the standard of care, the Defendant negligently violated the standard of care, and the statutory violation was the proximate cause of the injury. *Id.* § 7903(5)(A)(ii); *see* D. DOBBS, THE LAW OF TORTS § 117, at 277 (2000) (listing commonly accepted elements of negligence *per se*). Plaintiffs acknowledge in their opening brief that the proximate-cause analysis for the two exceptions is identical. App. Br. 63.

The complaint fails to allege facts that satisfy the requisite federal proximate cause standard. Under federal law, proximate cause means *direct* cause. But the causal chain alleged in the complaint is *indirect* in the extreme, as it depends on multiple independent (criminal) acts perpetrated by the Shooter, not Defendants.

The PLCAA adopts the federal proximate-cause standard that existed for decades before the statute's enactment. Not only does this federal standard require the event to be the natural and probable result of the act, but it also imposes a "direct-relationship requirement." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,

19

884 F.3d 489, 495 (4th Cir. 2018); *see also Bank of Am. Corp. v. City of Miami*, 581 U.S. 189, 202 (2017) (Fair Housing Act); *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 211 (1990) (antitrust); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 265–66 (1992) (RICO). Given the well-established directness requirements under these other federal statutes, it is only natural that Congress meant to have the same standard apply when it used the phrase "proximate cause" in the PLCAA. *See Hall v. Hall*, 584 U.S. 59, 71 (2018).

Plaintiffs do not plausibly allege that Defendants' speech caused Plaintiffs' injuries at all, and certainly not directly. A causal chain is not "direct" when it is interrupted by an independent act carried out by an independent actor—much less multiple independent acts, and even less multiple crimes (such as the alleged illegal conversion of legal firearms into automatic machineguns and then use of them in a mass shooting). Most fundamentally, the Shooter's criminal conduct is an independent intervening cause of Plaintiffs' injuries that breaks the causal chain. *See Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 620 (7th Cir. 2002); *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018); Restatement (Second) of Torts § 302B cmts. d, e (Am. L. Inst. 1965). In an action for false advertising or similar wrong, the "direct" injury is typically to the party who is misled into purchasing the product, not to *any* party that suffers downstream consequences that are different from the type of pecuniary injury the false-

20

advertising statutes are designed to address. As the Supreme Court explained, when a plaintiff's injury flows "from the misfortunes visited upon a third person by the defendant's acts," the plaintiffs' injuries are generally "too remote." *Holmes*, 503 U.S. at 268. That is especially so when, as here, there is a "discontinuity" between the nature of the injury suffered by the parties who were allegedly directly and indirectly harmed. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).

The context of the PLCAA's enactment underscores this analysis. Following a cascade of abusive lawsuits against firearms manufacturers, Congress passed the PLCAA to ensure that gun rights opponents could not "regulate interstate and foreign commerce" in firearms "through judgments and judicial decrees." 15 U.S.C. § 7901(a)(8). These unprecedented lawsuits had distorted legal concepts, including proximate cause, in a way that did not "represent a bona fide expansion of the common law," *id.* § 7901(a)(7), to cover "harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended," *id.* § 7901(b)(1). With the PLCAA being enacted for the purpose of barring lawsuits that "are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States," it is no surprise that the statute's exceptions require a showing of proximate

cause that Plaintiffs cannot meet. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 (9th Cir. 2009) (quoting 15 U.S.C. § 7901(a)(7)).

Plaintiffs' contrary arguments rely heavily on *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 91 F.4th 511 (1st Cir. 2024), *cert. granted*, No. 23-1141 (U.S.). But the Supreme Court has granted certiorari to review the First Circuit's proximate-cause analysis in that case, and in any event the decision is both distinguishable and wrong.

In that case, the nation of Mexico alleged that a group of firearm manufacturers were illegally *selling* arms that they knew would be transported to Mexico and used by cartels. *Id.* at 516–17. In turn, Mexico would need to expend additional resources to fight rising crime, provide medical services, and fund other government programs that became more expensive because of the defendants' alleged gun-running activities. *Id.* at 516. That these expenses were also the result of third parties committing crimes did not break the causal chain, according to the First Circuit, because the defendants selling the firearms were allegedly in cahoots with the cartels. *Id.* at 535. Not only were the third-party crimes predictable, but they were also the entire point of the alleged gun-running operation. *See Slay's Restoration*, 884 F.3d at 494 (acknowledging that intent can play a role in the proximate-cause analysis).

22

Two main facts distinguish this case from *Estados Unidos Mexicanos*. First, in *Estados Unidos Mexicanos*, the First Circuit concluded that Mexico had adequately pleaded that the gun companies themselves were guilty of aiding and abetting the sale of firearms to the cartels. 91 F.4th at 529. This case involves no such allegations. The sales to the Shooter were legal under Virginia law, J.A.31, and Plaintiffs have not alleged that Defendants even knew the Shooter existed, much less knew of his criminal plot or had any intent to aid and abet him in his criminal actions.

Second, it was the illegal *sale* of firearms to the cartels in *Estados Unidos Mexicanos* that was the alleged proximate cause of Mexico's injury. Plaintiffs in this case claim that it was allegedly deceptive speech on social media that proximately caused the shooting, not any illegal sales of firearms. App. Br. 56–59. To the extent that the predicate exception contemplates proximate cause being satisfied in cases involving the unlawful actions of third parties, illegally *selling* firearms to a cartel is much more likely to create a "direct" harm than posting about firearms in an allegedly misleading manner. Indeed, almost all predicate exception cases involve the *sale* of firearms to persons who the defendants allegedly knew were dangerous to themselves or others. *See, e.g.*, *Brady v. Walmart, Inc.*, No. 8:21-cv-1412, 2022

WL 2987078, at *7 (D. Md. July 28, 2022). Whatever the proper application of the predicate exception in such cases, they bear no resemblance to this one.[5]

Even if this Court is inclined to view this case and *Estados Unidos Mexicanos* similarly, the First Circuit was wrong. The Supreme Court has repeatedly stated that under federal law, proximate cause stops at the "first step" and does not allow for anyone who is indirectly harmed to collect. *Lexmark*, 572 U.S. at 132; *S. Pacific Co. v. Darnell-Taenzer Co.*, 245 U.S. 531, 533 (1918). The kind of harm that Mexico asserted was purely "derivative" of actual victims of unlawful violence. *Lexmark*, 572 U.S. at 133. The First Circuit's decision is also out of step with how the overwhelming majority of courts have analyzed proximate cause in cases in which plaintiffs sued the firearms industry for third parties' criminal misuse of their products. *See, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423–25 (3d Cir. 2002); *District of Columbia v. Beretta, U.S.A. Corp.*, 872 A.2d 633, 638 (D.C. 2005) (en banc); *City of Chicago v. Beretta, U.S.A. Corp.*, 821 N.E.2d 1099, 1107–08 (Ill. 2004). It is therefore no surprise that the Supreme Court has granted certiorari to review the First Circuit's decision.

---

[5] The most well-known lawsuit where victims of a mass shooting pursued liability based on the manufacturers' advertising practices did not directly analyze proximate causation. *See Soto v. Bushmaster Firearms, Int'l*, 331 Conn. 53, 90–100 (2019). Instead, the Connecticut Supreme Court analyzed the issue as statutory standing under Connecticut law. *Id.*

**B.      Plaintiffs Fail to Plead Proximate Cause Under Virginia Law.**

Independent from the proximate-cause showing required under federal law, Virginia law also requires proximate cause to exist for each of Plaintiffs' claims. The complaint fails to plead proximate causation under bedrock principles of Virginia law, and that failure is a separate and independent ground to affirm.

1. Under Virginia law, "[t]he proximate cause of an event is that act . . . which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beale v. Jones*, 210 Va. 519, 522 (1970). Even if an act causes an injury in the sense of but-for causation, to satisfy proximate cause, it must also have done so in a manner that was natural and temporally foreseeable. *Maroulis v. Elliott*, 207 Va. 503, 509–10 (1966).

Proximate cause under Virginia law is more difficult to establish when the plaintiff is assaulted by a third party, and the plaintiff is attempting to sue another person for purportedly inducing that third party to injure the plaintiff. Indeed, Virginia has a specific presumption that "acts of assaultive criminal behavior by third persons cannot reasonably be foreseen." *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 222 (1998). Assaults that rise to the level of attempted murder are especially unforeseeable under Virginia law because a defendant "cannot be deemed to have anticipated . . . a crime so horrid, and happily so rare, as that of murder." *Connell's*

25

*Ex'rs v. Chesapeake & Ohio Ry.*, 93 Va. 44, 58 (1896). Applying that standard, it is clear that an evil man attempting the "horrid" crime of a mass shooting is not a reasonably foreseeable result of Defendants' allegedly misleading speech. *Id.*

Analogous cases addressing the proximate-cause requirement show that Defendants' speech cannot be the proximate cause of attempted murder. Take, for example, how Virginia applies proximate-cause principles in so-called "dram shop" cases, which are those in which a drinking establishment is sued after a patron is overserved and harms a third party. In *Robinson v. Matt Mary Moran, Inc.*, a bar was sued after it illegally served alcohol to an already-intoxicated minor, who then killed the plaintiff in a drunk-driving accident shortly after leaving the bar. 259 Va. 412, 417 (2000). The Virginia Supreme Court held that proximate cause was absent because the patron's choice to drive after consuming alcohol broke the chain of causation. *Id.* As the Court explained, the act of selling alcoholic beverages "[i]s too remote to be a proximate cause of an injury to a third party resulting from the negligent conduct of the purchaser of the beverages." *Id.*

If serving alcohol to an intoxicated minor does not proximately cause a drunk-driving accident, it follows that Defendants' speech likewise could not have proximately caused the shooting that injured Plaintiffs. In *Matt Mary Moran*, the defendant was illegally serving alcohol to a specific individual who should not have been drinking in the first place. *Id.* at 414. Yet even then, the presumption that

"individuals, drunk or sober, are responsible for their own torts" could not be overcome. *Id.* at 417 (cleaned up). In this case, causation is even more attenuated. It is far more foreseeable that a drunk minor will get behind the wheel of a car than it is that a young man will see pro-firearm speech and decide that he should engage in a mass shooting.

The one case that Plaintiffs cite where a defendant was held to have proximately caused a shooting by a third party is nothing like this case. In *Gallimore v. Commonwealth*, 246 Va. 441 (1993), the defendant told an armed group of men that one of their wives had been kidnapped by another man and urged them to "'get the guys' who did it." *Id.* at 447. The statement was a lie, and there was no kidnapping. The man's wife had voluntarily gone to a motel with the alleged kidnapper, and the defendant had a vendetta against him. The group set out looking for the alleged kidnapper, and when they found him, a scuffle ensued resulting in the alleged kidnapper being shot by the woman's husband. The Supreme Court of Virginia upheld a finding that the defendant's lie had proximately caused the shooting because she knew that the natural reaction of a man hearing his wife had been kidnapped would be to attempt to rescue her, and it was "readily foreseeable" that a dangerous scuffle would ensue in such circumstances, especially as she knew the husband was armed. *Id.* at 447–48.

The defendants' actions in *Gallimore* bear no resemblance to Defendants' alleged actions here. The defendant there tarred an innocent man as a kidnapper and incited a group of armed men to "get" him. *Id.* A false allegation of kidnapping and a call to immediate action issued to a group of armed men is nothing like Defendants' widely disseminated pro-gun speech. *Gallimore* is inapposite.

2. Perhaps recognizing that the complaint fails to allege facts that would support a finding of proximate causation under Virginia law, Plaintiffs argued in the district court that state law does not require a showing of proximate causation for their claims. This argument is utterly without merit.

It is "well-established" in common law that a statutory cause of action is limited to those whose injuries are proximately caused by violations of the statute. *Waters v. Merchs'. Louisville Ins. Co.*, 36 U.S. 213, 223 (1837); *see also Lexmark*, 572 U.S. at 132 (making the same common-law point). Virginia courts have consistently applied this presumption across all areas of law. *See Levenson v. Commonwealth*, 68 Va. App. 255, 259 (2017); *Chapman v. Commonwealth*, 68 Va. App. 131, 140–41 (2017); *Hawkins v. Commonwealth*, 64 Va. App. 650, 655 (2015). The private right of action under the VFAS requires the plaintiff to show that he has suffered harm "as the result" of the false advertising. Va. Code Ann. § 59.1-68.3. Likewise, the VCPA requires the plaintiff to show that he has "suffer[ed] loss as the result of a violation" of that statute. *Id.* § 59.1-204. The phrase "as the result of" in

28

Virginia law carries a proximate-cause requirement. *See Tyler v. Commonwealth*, 75 Va. App. 218, 251 (2022) (Raphael, J., concurring) (collecting cases); *Levenson*, 68 Va. App. at 257–59 & n.1 (applying proximate cause when a statute required harm "as a result of driving under the influence"); *cf. Smith v. McLaughlin*, 289 Va. 241, 265 (2015) (requiring "foreseeability" when the plaintiff must show "losses suffered as a result of a breach" (quotation marks omitted)).

As for the negligence claims, "[a]ll negligence causes of action are based on allegations that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Steward ex rel. Steward v. Holland Fam. Props., Inc.*, 284 Va. 282, 286 (2012). Even when the standard of care is set by a statute, as with negligence *per se* claims, the plaintiff still must show that "the violation of the statute was a proximate cause of the injury." *Id.*

\*　　\*　　\*

The lack of proximate cause under Virginia law means that every claim against every Defendant must be dismissed. The VFAS, VCPA, and Plaintiffs' negligence theories require proximate causation under Virginia law to state a claim. Speech that allegedly misstates the quality and usefulness of firearms, firearm components, and ammunition does not "natural[ly]" lead to mass shootings. *Beale*, 210 Va. at 522.

29

### III.    Plaintiffs' Other PLCAA Arguments Fail.

In addition to their main arguments in this appeal concerning proximate cause, Plaintiffs also tee up a handful of auxiliary PLCAA issues concerning both the predicate exception and the PLCAA more broadly. None has merit.

### A.    Plaintiffs Incorrectly Assert That They Satisfy the Other Requirements of the Predicate Exception.

In addition to requiring proximate cause, the predicate exception also requires a "knowing[]" violation of a statute "applicable" to the sale or marketing of a qualified product for the PLCAA's claim bar to be lifted. 15 U.S.C. § 7903(5)(A)(iii). Plaintiffs' claims satisfy neither requirement.

### 1.    Defendants did not "knowingly" violate any statutes.

The complaint includes no allegations that Defendants knew, or even suspected, that they were violating Virginia or federal law through their speech. Plaintiffs do not contend otherwise. Instead, they mistakenly assert that the predicate exception does not require Defendants to "know[]" that they "violated" the law. App. Br. 55 (quoting 15 U.S.C. § 7903(5)(A)(iii)). According to Plaintiffs, all that is required is knowledge of the facts underlying the state-law offense. Here, that would be the content of the speech. Plaintiffs are wrong. As used in the predicate exception, "knowingly" requires knowledge of illegality in addition to factual knowledge.

The predicate exception's knowledge standard serves to "separate those who understand the wrongful nature of their act from those who do not." *Rehaif v. United*

*States*, 588 U.S. 225, 231 (2019) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.3 (1994)). As its text makes clear, the PLCAA requires knowledge of a specific prohibition. Here, " 'knowingly'. . . modifies the verb 'violate[d]' and its direct object, which in this case is" the applicable underlying statute. *Id.* at 229. When a statute uses "knowingly" in this manner, it requires knowledge of illegality. *Id.* at 231–32. That is because the "violation" itself is modified by the adverb "knowingly," rather than just the act made illegal. This is "ordinary English grammar." *Id.* at 229 (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009)).

Knowledge of the relevant law in these circumstances thus "separate[s] wrongful from innocent acts." *Id.* at 231; *Liparota v. United States*, 471 U.S. 419, 426 (1985). Accordingly, the Supreme Court has interpreted "knowingly" to require that a person who acquires or possesses food stamps "in any manner not authorized by" statute know that, as a matter of law, "his conduct [was] unauthorized by statute." *Liparota*, 471 U.S. at 425–26. *Liparota* mirrors this case; both involved a "knowingly" *mens rea* that attached to a legal violation and not just an act. *Id.*; *see also Ruan v. United States*, 597 U.S. 450, 466–67 (2022) (requiring knowledge of a legal violation when a statute prohibited "knowingly" distributing drugs in a legally "unauthorized" manner).

31

Against both grammar and precedent, Plaintiffs claim that "knowingly" requires mere "knowledge of the facts that constitute the offense." App. Br. 55 (quoting *Bryan v. United States*, 524 U.S. 184, 192–93 (1998)). Although "knowingly" may require only knowledge of underlying facts in other circumstances, those circumstances are not present in the predicate exception. If the direct object modified by the adverb "knowingly" is not another statute or legal prohibition, then "knowingly" will generally require knowledge of the action alone. For example, if a statute makes it illegal to "knowingly sell alcohol past 9 pm," a person could be convicted without knowledge of the statute itself. But if a statute makes it a crime to "knowingly sell alcohol in a manner that violates the nighttime-sales statute," the adverb "knowingly" modifies not just the underlying act but the "violation" itself. *Cf. Liparota*, 471 U.S. at 425.

Under the correct interpretation of "knowingly," Plaintiffs' claims cannot satisfy the predicate exception. Plaintiffs generally allege that Defendants knew the purported dangers of their products and the risks that some people might use them in a dangerous fashion. But such general allegations are insufficient to meet the predicate exception's *mens rea* requirement. Instead, the predicate exception requires allegations, and eventually proof, that Defendants knew they were violating a law and continued their conduct anyway. The complaint fails to satisfy this standard.

32

## 2. None of the underlying statutes is "applicable" to the "sale or marketing" of firearms.

The predicate exception is also inapplicable for another reason. None of the statutes involved is "applicable" to the "sale or marketing" of firearms or firearm parts. 15 U.S.C. § 7903(5)(A)(iii). As multiple dictionaries state, the term "applicable" means "suitable for being applied" or "relevant." *See Applicable*, MERRIAM-WEBSTER, https://bit.ly/4a3lrsx (last visited Jan. 3, 2025); *Applicable*, *Black's Law Dictionary* 98 (6th ed. 1990).[6] The predicate exception is properly understood to apply only to state or federal statutes that (1) "expressly regulate firearms"; (2) "courts have applied to the sale and marketing of firearms"; or (3) "clearly can be said to implicate the purchase and sale of firearms." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 404 (2d Cir. 2008); *see also Ileto*, 565 F.3d at 1138 ("Congress intended to preempt general tort law claims such as Plaintiffs', even though California has codified those claims in its civil code."). Thus, "a statute of general applicability that does not encompass the conduct of firearms manufacturers" is not a predicate statute. *City of New York*, 524 F.3d at 400. It is not enough, in other words, that a statute is so general that it could be read to encompass

---

[6] It is true that some dictionary definitions are broader. *See Ileto*, 565 F.3d at 1133–34 (giving examples). But when dictionaries give multiple possible definitions, courts should choose the one that fits with the surrounding text and context. The text and context clearly favor Defendants' definition. *See City of New York*, 524 F.3d at 404.

33

firearms manufacturers or sellers along with the general public; a predicate statute must be legislatively directed toward the purchase and sale of firearms in order to meet the PLCAA's requirement of being "applicable." *See id.* at 400–04.

The VFAS does not satisfy this requirement. It applies to "[a]ny person, firm, corporation or association who" engages in false advertising, and it specifies that "[t]he actions prohibited in this section, shall be construed as including . . . the advertising in any manner by any person of any goods." VA. CODE ANN. § 18.2-216(A). Its explicit application to "any person" makes this statute categorically one of general applicability. The VCPS similarly applies to "supplier[s]" in general, *id.* § 59.1-200(A), which it defines as "a seller, lessor, licensor, or professional who advertises, solicits, or engages in consumer transactions, or a manufacturer, distributor, or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions," *id.* § 59.1-198. Thus, neither statute is directed specifically toward manufacturers or sellers of firearm parts.[7]

---

[7] To the extent that Plaintiffs argue that the NFA and UMGA can serve as predicate statutes, they fail to explain what part of those laws Defendants allegedly violated, which makes it impossible to determine whether those provisions are properly deemed predicate statutes. They also do not identify a cause of action that allows them to sue directly under the NFA or UMGA. The PLCAA explicitly disclaims creating a cause of action, 15 U.S.C. § 7903(5)(C), and neither of those statutes contains one either. Thus, without a cause of action, Plaintiffs cannot sue under those provisions, much less use them to satisfy the predicate exception.

34

### B.    Magazines Are "Qualified Products" Protected By the PLCAA.

Plaintiffs argue that the Defendants that are accused of selling magazines cannot invoke the PLCAA because AR-15 magazines are not "qualified product[s]," which the statute defines to include a "firearm . . . or a *component part of a firearm*." 15 U.S.C. § 7903(4) (emphasis added). But the complaint's allegations make plain that magazines are necessary for an AR-15 to function as intended, and the district court correctly held that they are "component part[s]" under the statute. J.A.332–333.

Because the PLCAA does not define "component part," the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) (quotation marks omitted). According to ordinary meaning, magazines are "component parts" of AR-15s because they "form, compose, or make up" the firearm and thus are "one of the portions" into which it may be divided. *Component*, *Constituent*, *Part*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed. 1944); *see also Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 n.11 (2007) ("'Component' is commonly defined as 'a constituent part,' 'element,' or 'ingredient.'") (quoting *Component*, 2 WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 466 (1981)); *United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) ("[T]he common meaning of

'component,' . . . is 'a part or element of a larger whole, especially a part of a machine or vehicle.'") (quoting *Component*, OXFORD DICTIONARY OF ENGLISH 357 (3d ed. 2010)).

Seeking to avoid the plain language of the PLCAA, Plaintiffs characterize magazines as "weapons accessories," *see* App. Br. 16—a term the PLCAA does not use. This argument rests upon a misunderstanding of how AR-15s and other semi-automatic rifles operate and is fundamentally at odds with allegations made throughout the complaint. Plaintiffs allege that the sole purpose of an AR-15 is to "quickly put many rounds on target," J.A.38–39—something it cannot do without a magazine. Plaintiffs cannot trumpet the semi-automatic nature and military origins of the AR-15 rifle in one part of their complaint and then turn around and say that a magazine is not a "component part" of the rifle in another. 15 U.S.C. § 7903(4). Taking away the magazine from an AR-15 transforms it into a completely different firearm, practically a musket. Notably, the Bureau of Alcohol, Tobacco, and Firearms lists "[m]agazine bodies" as a piece used to "assemble a semiautomatic rifle." 27 C.F.R. § 478.39(a), (c)(18); *see also* DUNCAN LONG, THE AR-15/M16: A PRACTICAL GUIDE 35 (1985) ("One of the most important parts of the AR-15 is the magazine.").

Courts have also construed "component part" under the PLCAA to include magazines. The Supreme Court of Texas, for instance, held that "both firearms and

36

magazines (along with other *component parts*) are 'qualified products' subject to the PLCAA's general prohibition against qualified civil liability actions." *In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) (quoting 15 U.S.C. § 7903(4), (5)(A)) (emphasis added). In another case, the District of Nevada similarly held that a bump stock is a "component part" for PLCAA purposes because a "stock is an integral component of a rifle as it permits the firearm to be fired from the shoulder," and a bump stock is no less a component simply because it "is a modified type of rifle stock that replaces the existing stock." *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018). Magazines are likewise necessary for the proper use of the AR-15, which is designed to be used with a detachable magazine. They are therefore component parts of such firearms.

The only contrary authority that Plaintiffs muster is a single opinion from a Nevada state trial court. *See* App. Br. 43–44 (citing *Green v. Kyung Chang Indus. USA, Inc.*, No. A-21-838762-C, 2022 WL 987555 (Nev. Dist. Ct. Mar. 23, 2022)). That decision is wrong to the extent it holds that a magazine is not a "component part" of an AR-15 just because an AR-15 can fire a single shot without one. Taking *Green*'s strict absolutely-necessary-to-fire test and applying it to other contexts, it becomes apparent that test cannot even accurately describe what a "component part" of a machine is. For example, a car can be driven without tires on its rims, but no reasonable person would deny that tires are a "component part" of a car. *Green*'s

reasoning is also at odds with the complaint's allegations about the AR-15 being designed for rapid fire, which is impossible without a magazine. J.A.38–39.

Further support for treating magazines as "component parts" under the PLCAA can be found in cases holding that magazines are "arms" for Second Amendment purposes. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. N.J. Att'y Gen.*, 910 F.3d 106, 116 (3d Cir. 2018) ("*ANJRPC*"), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); *see also Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1276 (N.D. Cal. 2014) (observing that magazines are "integral components to vast categories of guns"). Simply put, "[b]ecause magazines feed ammunition into certain guns, and ammunition is necessary for such a gun to function as intended," magazines are component parts of such firearms just as they are " 'arms' within the meaning of the Second Amendment." *ANJRPC*, 910 F.3d at 116.

Plaintiffs argue that magazines should not be treated as "component parts" under the PLCAA because the statute does not include silencers (which are defined as firearms in 18 U.S.C. § 921(a)(3)) in its definition of a firearm for purposes of defining a qualified product. App. Br. 40–41. That Congress did not define the term "firearm" in the PLCAA to include a silencer reveals nothing about whether

magazines that *are* necessary for many of America's most popular semiautomatic rifles to function as intended are a component part of a firearm.[8]

### C. Plaintiffs Cannot Change Course and Argue that Magpul and SureFire Fail to Meet the Definition of a "Manufacturer or Seller."

Plaintiffs argue for the first time on appeal that Magpul and SureFire are not "manufacturer[s]" or "seller[s]" under the PLCAA. App. Br. 47–49. This was never raised by Plaintiffs in the extensive district court briefing and is therefore forfeited.

"Absent exceptional circumstances," this Court does "not consider issues raised for the first time on appeal." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) (citation omitted). When a party fails to raise an argument in the district court, this Court will reverse only when the omitting party, at a minimum, establishes "fundamental error" or a denial of fundamental justice. *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985). This case is not one where Plaintiffs can show any sort "fundamental error" infecting the proceedings below. Indeed, they do not even attempt to do so, wholly ignoring the fact that they

---

[8] Plaintiffs argue in a three-sentence footnote that the district court erred in holding that the "grip" manufactured by Magpul is a "component part" of a firearm. *See* App. Br. 43 n.12. That is not enough to preserve the issue for appellate review. *See Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 607 (4th Cir. 2009) (concluding that argument raised in perfunctory footnote was forfeited). In any event, the grip is a standard component on all AR-15 rifles; it both provides a necessary human interface for hand placement and houses the gun's safety detent spring. *See* S.A.39-40. Accordingly, ATF categorizes "pistol grips" as "parts" of a rifle. 27 C.F.R. § 478.39(a), (c)(16).

never raised this argument in the district court. In circumstances where a party "does not . . . make any effort" to show "fundamental error or a denial of fundamental justice" after failing to brief an argument below, this Court usually "decline[s] to consider [the] new argument on appeal." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 235 (4th Cir. 2024) (quotation marks omitted).

Even if Plaintiffs had raised this argument, it is meritless. They argue that even when a party has a license "under chapter 44 of title 18," it cannot invoke the PLCAA's protection unless its license is related to the specific component part at issue. App. Br. 47–49 (quoting 15 U.S.C. § 7903(2)). Not so. "Chapter 44 of title 18" only covers licenses concerning "firearms" and "ammunition." 18 U.S.C. § 923(a). It does not require a license to sell the "component parts" of a firearm, such as a stock, barrel, or magazine. Thus, if Plaintiffs are correct that a license to sell a specific component part is required, then the PLCAA's protection for component parts of firearms is illusory because there is no license for component parts "under chapter 44 of title 18." App. Br. 48–49. That cannot be correct. A reasonable reading of the license requirement is that license holders such as Magpul and SureFire can invoke the PLCAA for any firearm, component part, or ammunition they sell. And even if the license must bear some "nexus" to the sale at issue, a firearm license

40

clearly bears a sufficient relationship to the sale of component parts to satisfy that requirement.[9] *See Ileto*, 565 F.3d at 1146.

> ### D. Plaintiffs Cannot Bootstrap the Rest of Their Case to a Single Valid Cause of Action.

In a last-ditch effort to evade the PLCAA, Plaintiffs argue that if a single claim against a single Defendant falls into a single statutory exception, then *every* claim against *every* Defendant in the case can go forward. App. Br. 49–51. Plaintiffs argue that because the PLCAA uses the term "action" instead of "claim" when describing what types of lawsuits are barred under the PLCAA, 15 U.S.C. § 7903(5), the entire lawsuit (the "action") may proceed so long as one cause of action is not barred by the PLCAA.

This kind of "claim smuggling" through the use of the term "action" has been roundly rejected in other contexts and cannot prevail here either. *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 102 (3d Cir. 2000) (Alito, J.); *Hays v. Hoffman*, 325 F.3d 982, 990 (8th Cir. 2003); *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415–16, 1420 (9th Cir. 1992). In a nearly identical scenario, a *qui tam* realtor argued that a statute that granted jurisdiction over

---

[9] Despite Plaintiffs' suggestion, FAB Defense and TorkMag make no concessions regarding PLCAA's application to any Defendant in this case. The claims against FAB Defense and Torkmag are properly dismissed on Article III standing grounds, and the other state law and First Amendment grounds set forth herein.

41

"actions" based on nonpublic information was satisfied when only one of multiple claims in the suit was actually based on nonpublic information. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2009). The Supreme Court swiftly rejected using the term "action" to bootstrap jurisdiction for claims that would otherwise have been barred. "The plaintiff's decision to join all of his or her claims in a single lawsuit should not rescue claims that would have been doomed . . . if they had been asserted in a separate action." *Id.* (cleaned up). Likewise, the joinder of valid and invalid claims in the same "action" would not make the otherwise-valid claims now invalid. *Id.*

The PLCAA nowhere contemplates that an otherwise-barred suit against one manufacturer or seller may proceed so long as it is combined with non-barred claims. Indeed, the PLCAA treats the term "action" as a synonym for "claim," as the Supreme Court did in *Rockwell*. For example, the list of exceptions from the PLCAA includes "an action brought against a seller for negligent entrustment or negligence per se," and "an action for breach of contract or warranty." 15 U.S.C. § 7903(5)(A)(ii), (iv).

Furthermore, treating "action" as a synonym for "claim" or "cause of action" makes sense, as Plaintiffs' reading would swallow the PLCAA's broad immunity and produce absurd results. Instead of immunizing firearm manufacturers from state tort suits, it would permit entire suits to move forward—no matter how many of the

42

claims fail to satisfy any PLCAA exception—so long as the plaintiff could identify a single viable claim, thus defeating the statute's core purpose. *See id.* § 7901(b)(1). Conversely, the same claims could *not* proceed if a plaintiff were not clever enough to pair them with one permissible claim against some other defendant. Courts generally interpret statutes to avoid such absurd results. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

Despite Plaintiffs' assertions to the contrary, courts have routinely interpreted the PLCAA as requiring them to analyze its exceptions on a claim-by-claim basis. *See, e.g.*, *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1146 (D. Nev. 2019); *Brady*, 2022 WL 2987078, at *6–7. The handful of contrary opinions cited by Plaintiffs contained no analysis whatsoever and utterly failed to grapple with the Supreme Court's decision in *Rockwell* or the statutory structure. *See, e.g.*, *Minnesota v. Fleet Farm LLC*, 679 F. Supp. 3d 825, 840 (D. Minn. 2023); *Williams v. Beemiller, Inc.*, 100 A.D.3d 143, 151 (N.Y. App. Div. 2012).

## IV.    The First Amendment Prohibits Liability for Defendants' Pro-Firearm Speech.

At bottom, this case is about speech. Defendants sell firearms and believe strongly in the lawful exercise of Second Amendment rights. As the complaint shows, their social-media pages and other publications often reflect that view. The

43

First Amendment does not permit punishing Defendants for the content or viewpoint of their speech, even if it may be unpopular in some circles. Although the district court did not rule on the First Amendment issue, it was raised below and provides another strong basis for affirming. *See United States ex rel. Drakeford v. Tuomey,* 792 F.3d 364, 375 (4th Cir. 2015) ("[W]e may affirm a district court's ruling on any ground apparent in the record.").

The First Amendment protects the content of speech except for a few "well-defined and narrowly limited classes," such as incitement, obscenity, true threats, and defamation. *United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (quotation marks omitted); *see also Counterman v. Colorado*, 600 U.S. 66, 83 (2023) (Sotomayor, J., concurring). Even in civil cases between private parties, a court cannot apply a rule that would otherwise be an "invalid restriction[]" on First Amendment freedoms. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 695–99 (6th Cir. 2002) (analyzing the First Amendment issues arising from imposing tort liability against a video game distributor based on allegations that its violent video games foreseeably caused a third-party's criminal acts).

Applying the VFAS, VCPA, or either type of negligence to the speech here would cross that line. The allegations in the complaint are that Defendants' pro-gun speech, including social-media posts, negligently inspired a mass shooting. J.A.40–

81. Those allegations involve classic viewpoint discrimination—if the posts involved anti-gun speech, there would be no lawsuit.

Normally, when one person's speech is alleged to cause another person to commit an act of criminal violence, the First Amendment question is whether the speech is unprotected "incitement." A statement will not constitute incitement unless it is "directed and likely to produce an imminent lawlessness." *United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020); *see generally Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam). There is, and can be, no serious contention that the speech at issue reaches this high bar. None of it calls for violence, and there is no allegation that Defendants' speech was "directed" with the intent to produce "imminent" lawlessness. *Miselis*, 972 F.3d at 536. Nor can Plaintiffs demonstrate that the speech at issue falls within any other unprotected category for the fundamental reason that their negligence theory lacks the element of subjective intent that the First Amendment demands before speech may be deemed unprotected. *Counterman*, 600 U.S. at 75 (explaining that prohibitions based on the content of speech "have the potential to chill, or deter, speech outside their boundaries," so the First Amendment imposes subjective intent requirements for all "the most prominent categories of historically unprotected speech").

Plaintiffs did not seriously dispute this analysis below. Instead, they argued that the commercial-speech doctrine applies, which they claimed would allow the

regulation of allegedly "misleading" speech that does not rise to the level of incitement. *See Recht v. Morrisey*, 32 F.4th 398, 410 (4th Cir. 2022). But Defendants' speech was not "commercial," nor was it "misleading" in a commercial sense. Further, based on Plaintiffs' allegations, even under the commercial speech test, they must demonstrate at the threshold that Defendants' speech falls within a traditionally unprotected category. Plaintiffs cannot do so.

Commercial speech is generally defined as "speech which does 'no more than propose a commercial transaction.' " *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 385 (1973)). The "proposal of a commercial transaction" is "*the test* for identifying commercial speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989)). Thus, when a restriction on speech strikes at "the substance of the information communicated" as opposed to "any commercial aspect of [it]," *Linmark Associates, Inc. v. Willingboro Twp.*, 431 U.S. 85, 96 (1977), the First Amendment demands the most exacting scrutiny, *see 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499, 501–02 (1996).

The speech here is noncommercial for two related reasons. First, it does not even propose transactions; every piece of allegedly misleading speech is a so-called "lifestyle" publication. They may include products manufactured by Defendants but

do not include the traditional product-and-price form of an advertisement that qualifies for the commercial-speech exception. *Va. Pharmacy Bd.*, 425 U.S. at 762. Second, to the extent the speech "propose[s] a commercial transaction" at all, its context and content go well beyond mere offers to sell. *Id.* (quoting *Bigelow v. Virginia*, 421 U.S. 809, 822 (1975)). Such speech is inherently non-commercial in nature. Plaintiffs cannot deny that the purpose of Defendants' speech was to promote the exercise of gun rights, including firearm ownership. For example, one post from Bravo company contains a picture of a firearm with the caption "life saving tools." J.A.53 (cleaned up). Plaintiffs claim this is misleading because firearms are deadly weapons. J.A.53. Defendants believe it is not misleading because a well-armed citizenry provides a deterrent effect on criminals. But the point is that referring to a firearm as a life-saving tool is obviously First Amendment-protected advocacy regarding gun rights, not mere commercial speech. Other posts include similarly protected taglines like "peace through superior firepower," J.A.50, and "Ready for Duty," J.A.48. These messages have nothing to do with a *commercial* representation, such as price or quantity, nor do they inflict any *commercial* harms. *See 44 Liquormart*, 517 U.S. at 501–02. The fact that Defendants are in the firearm industry makes no difference. *See Discovery Network*, 507 U.S. at 422–23. After all, the New York Times certainly has a financial interest when it advertises new stories and op-

eds, yet it does not check its First Amendment rights at the door as a result. *See N.Y. Times Co.*, 376 U.S. at 265.

Even if some of Defendants' posts had a commercial purpose along with a non-commercial one, that would not make them subject to the commercial-speech doctrine for two reasons. First, when commercial speech is "inextricably intertwined" with noncommercial speech, the commercial aspects of the speech are fully protected too. *Riley*, 487 U.S. at 796. As this Court has summarized, when an organization's otherwise-commercial speech is "intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues," the speech is fully protected. *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 261 (4th Cir. 2017) (quoting *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980)). Plaintiffs can offer no way to distinguish the advocacy in Defendants' speech from any commercial incentive to sell firearms. At bottom, their claims are that gun-rights advocacy is bad and inherently dangerous. But as Justice Thomas has noted, it is impossible "to draw a coherent distinction between commercial and noncommercial speech" in the context of politically charged advertising. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 575 (2001) (Thomas, J., concurring).

Second, the commercial speech doctrine applies only when the regulation of speech at issue is germane to the commercial purpose of the speech. *See 44 Liquormart*, 517 U.S. at 501 ("[W]hen a State entirely prohibits the dissemination of truthful, nonmisleading commercial messages for reasons unrelated to the preservation of a fair bargaining process, there is far less reason to depart from the rigorous review that the First Amendment generally demands.") (plurality opinion). To draw an analogy, the government may ban or restrict obscene speech on the grounds of its obscenity. *See Stevens*, 559 U.S. at 468–69. But it cannot ban or restrict only obscene speech that is critical of the government, while allowing obscene speech on other topics to go unrestricted. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 383–84 (1992). In such a case, it is the protected element of the speech that is being targeted, not the unprotected one. *See also Carey v. Population Servs. Int'l*, 431 U.S. 678, 700–01 (1977) (advertising of legal, constitutionally protected products cannot be suppressed irrespective of whether the speech is commercial). The same logic applies here. Commercial speech is given less protection because of its commercial nature, but if the speech is being restricted for something other than its commercial effects, then the normal rules for viewpoint discrimination apply.

Any liability here for Defendants' speech would not be regulating its "commercial" aspects but rather its noncommercial promotion of the exercise of Second Amendment rights. Plaintiffs' claim is not that they suffered a commercial

49

harm because they relied on anything misleading in Defendants' speech. Instead, they claim personal injuries based on the *noncommercial* messages that the speech allegedly expressed. Permitting liability for disfavored messages is classic regulation of political, not commercial, speech. And if Plaintiffs' theory were correct, a wide range of firearm-laden speech produced for commercial purposes—e.g., movie series such as "John Wick" and "The Expendables"—would be exposed to Plaintiffs' sweeping statutory and tort-based theories of liability.

Nor can Plaintiffs' conclusory assertion that the speech was "misleading" or "deceptive" be credited when the crux of their claims is that Defendants' speech allegedly "encourage[s] egregious criminal conduct." S.A.114; *see NAACP v. Button*, 371 U.S. 415, 429 (1963) (labels are not dispositive of First Amendment protections). Putting labels aside, Plaintiffs plainly attempt to rely on *Central Hudson*'s exclusion of commercial speech related to illegal activity. *See, e.g.*, J.A.30; J.A.37–38; J.A.40–41. But this exclusion applies only if the transaction being promoted is illegal. Indeed, as Plaintiffs recognized below, the test for whether commercial speech concerns unlawful activity, and thus is unprotected, is whether "the commercial activity," i.e., the commercial transaction, "itself is illegal." S.A.112 (quoting *Pittsburgh Press Co.*, 413 U.S. at 389). Plaintiffs do not allege any illegal commercial transaction. To the contrary, they allege the Shooter purchased all the products at issue *legally*. J.A.31.

Because Defendants were neither inciting violence nor engaging in commercial speech, they cannot be held liable for their speech. When a viewpoint-based regulation is challenged, courts generally do not engage in means-ends balancing because viewpoint suppression can never be a compelling government interest. *See, e.g.*, *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (not applying the tiers of scrutiny). The case against applying any means-ends balancing is even stronger when the court is not evaluating "the reasoned deliberation of democratically elected legislative bodies" but the decision "whether to permit tort liability for protected speech." *James*, 300 F.3d at 697.

If this Court does utilize means-ends balancing, strict scrutiny must apply. Under strict scrutiny, Plaintiffs must show that the "regulation [of speech] is necessary to serve a compelling state interest," *Burson v. Freeman*, 504 U.S. 191, 198 (1992) (citation omitted), and the regulation must be the least restrictive means of achieving the interest, *McCullen v. Coakley*, 573 U.S. 464, 478 (2014).

Even if Plaintiffs could properly speak for the State in raising its interest in preventing mass shootings, restricting firearm manufacturers' and sellers' speech is obviously not the least restrictive means of promoting that interest. *See United States v. Alvarez*, 567 U.S. 709, 727 (2012) (plurality opinion) ("The remedy for speech that is false is speech that is true. This is the ordinary course in a free society.").

51

Ultimately, Plaintiffs cannot impose liability for Defendants' speech without trampling constitutionally protected rights.

At an absolute minimum, the serious constitutional questions raised here counsel for interpretive restraint. *See NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 500 (1979). If it is "fairly possible" to interpret statutes to avoid serious constitutional issues, courts have an obligation to do so. *Crowell v. Benson*, 285 U.S. 22, 62 (1932). It is more than "fairly possible" to do so here for the reasons explained in the preceding sections of this brief. *Cf. James*, 300 F.3d at 695 (construing Kentucky tort law narrowly to avoid First Amendment issues in case concerning violent video games).

## V.    The District Court Did Not Commit Any Procedural Errors.

The end of Plaintiffs' brief alludes to a handful of procedural disputes concerning the district court's management of this case, but none of their points has merit.

Plaintiffs ask that this Court vacate the dismissal and remand for them to amend their complaint because the district court should have given them another shot. App. Br. 65. But they do not develop any argument explaining how or why the district court erred, so they have waived their argument. *See Wahi*, 562 F.3d at 607; FED. R. APP. P. 28(a)(8). Indeed, they never actually moved to amend their complaint

below, nor have they even attempted to identify what facts could cure their pleading deficiencies. *Id.*

Nor are Plaintiffs correct that the district court erred by dismissing FAB Manufacturing. Once the two complaints were consolidated, the court ordered that "[a]ll subsequent filings will be made in the Lowy action." S.A.119. After that, FAB Manufacturing moved in that case to dismiss on the basis of personal jurisdiction, as requested. J.A. 274–282. When Plaintiffs took issue with the motion only discussing the *Lowy* complaint, FAB Manufacturing offered to add references to the identical *Harris* complaint and clarified that the motion applied to both complaints. J.A.284–312. The district court understood FAB Manufacturing to be following its directions because it dismissed FAB Manufacturing along with the other Defendants, and Plaintiffs offer no reason why doing so was also an abuse of discretion.

Additionally, Plaintiffs' procedural peccadillos should not distract the Court from the fact that there is no personal jurisdiction over FAB Manufacturing. J.A.285. The *only* relevant allegations are that it "is a corporate entity with its principal place of business in Israel," "[it] is the parent company of Defendant FAB Defense, Inc.," and "[it] is a citizen of Israel." J.A.34; J.A.37; J.A.121; J.A.124. These allegations do not come anywhere close to establishing personal jurisdiction. J.A.277–279. The complaint makes no allegations of any purposeful commercial or business activity by FAB Manufacturing in Virginia. Furthermore, the mere existence of a parent-

subsidiary relationship is not an adequate predicate for attributing jurisdictional contacts from one to the other. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). The Court should affirm the dismissal of the complaints against FAB Manufacturing on personal-jurisdiction grounds.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court.

Date: January 21, 2025

Respectfully Submitted,

/s/ V.R. Bohman
V.R. Bohman
Cameron J. Schlagel
SNELL & WILMER, LLP
3883 Howard Hughes Parkway
Suite 1100
Las Vegas, Nevada 89169
Telephone: (702) 784-5200
Facsimile: (702) 784-5252
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: (714) 427-7000
Facsimile: (714) 427-7799
vbohman@swlaw.com
cschlagel@swlaw.com

David C. Bowen
Forrest M. Via
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566

/s/ David H. Thompson
David H. Thompson
Brian W. Barnes
COOPER & KIRK, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
Telephone: (202) 220-9600
dthompson@cooperkirk.com
bbarnes@cooperkirk.com

*Counsel for Defendants-Appellees Magpul Industries Corp. and SureFire, LLC*

/s/ Alan D. Bart
Alan D. Bart
REED SMITH LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, VA 23219-4068
Telephone: (804) 344-3400
abart@reedsmith.com

dbowen@wilsav.com
fvia@wilsav.com

*Counsel for Defendant-Appellee*
*Daniel Defense, LLC*

/s/ Jeremy Adelson
Jeremy Adelson
HANSEN REYNOLDS LLC
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
Telephone: (414) 326-4043
jadelson@hansenreynolds.com

Alan W. Nicgorski
HANSEN REYNOLDS LLC
150 S. Wacker Drive, 24th Floor
Chicago, Illinois 60606
(312) 265-2253
anicgorski@hansenreynolds.com

Charles E. James, Jr.
Meredith M. Haynes
WILLIAMS MULLEN
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6529
cjames@williamsmullen.com
mhaynes@williamsmullen.com

Camden R. Webb
WILLIAMS MULLEN
301 Fayetteville Street, Suite 1700
Raleigh, North Carolina 27601
Telephone: (919) 981-4000
cwebb@williamsmullen.com

*Counsel for Defendant-Appellee*
*Bravo Company USA, Inc.*

James B. Vogts
Andrew A. Lothson
SWANSON, MARTIN & BELL, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
Telephone: (312) 321-9100
jvogts@smbtrials.com
alothson@smbtrials.com

*Counsel for Defendants-Appellees*
*Vista Outdoor, Inc. and Federal*
*Cartridge Company*

/s/ David C. Bowen
David C. Bowen
Forrest M. Via
WILLCOX & SAVAGE, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
dbowen@wilsav.com
fvia@wilsav.com

Scott L. Braum
Timothy R. Rudd
BRAUM | RUDD
812-C East Franklin Street
Dayton, Ohio 45459
Telephone: (937) 396-0089
Facsimile: (937) 396-1046
slb@braumrudd.com
trr@braumrudd.com

*Counsel for Defendants-Appellees*
*Loyal 9 Manufacturing, LLC d/b/a*
*Sons of Liberty Gun Works, FosTech,*
*Inc., and Centurion Arms, LLC*

55

*/s/ Abram J. Pafford*
Abram J. Pafford
Jonathan Y. Ellis
McGuireWoods LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 857-1725
Facsimile: (202) 828-3350
apafford@mcguirewoods.com

Harley J. Goldstein, Esq.
Neha Khandhadia, Esq.
(admission forthcoming)
111 West Washington Street
Suite 1221
Chicago, Illinois 60602
Telephone: (312) 337-7700
harleyg@goldmclaw.com
nehak@goldmclaw.com

*Counsel for Defendants-Appellees FAB*
*Manufacturing & Import of Industrial*
*Equipment Ltd. and FAB Defense, Inc.*

*/s/ Nicholas P. Vari*
Nicholas P. Vari
Andrew N. Cook
K&L Gates, LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-8365
Nicholas.Vari@klgates.com
Andrew.Cook@klgates.com

*Counsel for Defendants-Appellees*
*Fiocchi of America, Inc. and Fiocchi*
*Munizioni S.p.A.*

*/s/ Christopher Renzulli*
Christopher Renzulli
David A. Jones
Renzulli Law Firm, LLP
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
crenzulli@renzullilaw.com
djones@renzullilaw.com

*Counsel for Defendants-Appellees*
*Hearing Protection, LLC and*
*Torkmag, Inc.*

56

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,941 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendants-Appellees*
*Magpul Industries Corp. and*
*SureFire, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2025, a true and accurate copy of the foregoing Response was filed electronically with the Clerk of the Court and served on counsel of record using the CM/ECF system.

/s/ David H. Thompson
David H. Thompson

*Counsel for Defendants-Appellees*
*Magpul Industries Corp. and*
*SureFire, LLC*