No. 24-1822

# In the United States Court of Appeals for the Fourth Circuit

------

KAREN LOWY, individually and as parent and next friend of N.T., AND ANTONIO HARRIS, PLAINTIFFS-APPELLANTS

*v.*

DANIEL DEFENSE, LLC, et al., DEFENDANTS-APPELLEES

and

STARLINE, INC. AND JOHN DOES 1–20, DEFENDANTS

------

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA (NOS. 23-1338 & 23-1501) (THE HONORABLE CLAUDE M. HILTON, J.)*

------

**REPLY BRIEF OF APPELLANTS**

------

KATHRYN M. ALI
ELIZABETH C. LOCKWOOD
MEGHAN PALMER
ALI & LOCKWOOD LLP
  *501 H Street NE, Suite 200*
  *Washington, DC 20002*
  *(202) 651-2475*
  *katie.ali@alilockwood.com*

H. CHRISTOPHER BOEHNING
JACOBUS J. SCHUTTE
JENIFER N. HARTLEY
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019-6064*
  *(212) 373-3700*
  *cboehning@paulweiss.com*

*Counsel for Appellants Karen Lowy, individually and as parent and next friend of N.T., and Antonio Harris*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................... 1

ARGUMENT ................................................................................. 1

I.   This Court Has Jurisdiction. ................................................... 1

II.  Plaintiffs Have Standing. ...................................................... 2

III. PLCAA Does Not Bar Plaintiffs' Actions. ................................. 7

   A.  PLCAA Cannot Protect Daniel Defense, Magpul, Surefire, or
       Torkmag for Arming the Shooter with Rifle Magazines. ............ 8

   B.  The VCPA, VFAS, UMGA, and NFA Are Statutes "Applicable
       to the Sale or Marketing" of Defendants' Firearms and
       Ammunition and Plaintiffs Have Pled Knowing Violations of
       Those Laws. ......................................................... 11

   C.  Plaintiffs Have Pled Proximate Cause. ............................. 15

       1.  Plaintiffs Have Pled Proximate Cause under Virginia Law. .... 16

       2.  There Is No Separate Federal Proximate Cause
           Requirement, and Even If There Is, Plaintiffs Satisfied It. ... 18

IV.  The First Amendment Does Not Bar Plaintiffs' Claims. ............... 22

V.   The District Court's Additional Errors ................................... 31

CONCLUSION ............................................................................. 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H.* v. *Rockingham Pub. Co., Inc.*,
495 S.E.2d 482 (Va. 1998).................................................................17

*In re Academy*,
625 S.W.3d 19 (Tex. 2021) ...............................................................9

*Ateres Bais Yaakov Acad. of Rockland* v. *Town of Clarkstown*,
88 F.4th 344 (2d Cir. 2023)................................................................5

*Banca Del Sempione* v. *Provident Bank of Md.*,
85 F.3d 615 (4th Cir. 1996) (unpublished).........................................2

*Bank of Am. Corp* v. *City of Miami*,
581 U.S. 189 (2017)..........................................................................22

*Bd. of Trs. of State Univ. of N.Y.* v. *Fox*,
492 U.S. 469 (1989).....................................................................26, 27

*Bennett* v. *Spear*,
520 U.S. 154 (1997)............................................................................4

*Bianchi* v. *Brown*,
111 F.4th 438 (4th Cir. 2024) (en banc) ...........................................17

*Bittner* v. *United States*,
598 U.S. 85 (2023)............................................................................20

*Block* v. *Meese*,
793 F.2d 1303 (D.C. Cir. 1986)...........................................................4

*Bolger* v. *Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)............................................................................28

*Brady* v. *Walmart, Inc.*,
2022 WL 2987078 (D. Md. July 28, 2022) .......................................12

*Bridge* v. *Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008).............................................................21

*Brown* v. *Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011).............................................................29

*Brown* v. *Wright*,
    216 S.E.2d 13, 15 (Va. 1975).............................................13

*Bryan* v. *United States*,
    524 U.S. 184 (1998).............................................................14

*Charles* v. *City of Los Angeles*,
    697 F.3d 1146 (9th Cir. 2012)............................................29

*City of New York* v. *Beretta U.S.A. Corp.*,
    524 F.3d 384 (2d Cir. 2008)...............................................12

*Connell's Ex'rs* v. *Chesapeake & Ohio Ry. Co.*,
    24 S.E. 467 (Va. 1896)........................................................17

*Del. State Sportsmen's Ass'n* v. *Del. Dep't of Safety & Homeland
    Sec.*,
    108 F.4th 194 (3d Cir. 2024), *cert. denied*, No. 24-309 (U.S.
    Jan. 13, 2025)........................................................................9

*Dep't of Com.* v. *New York*,
    588 U.S. 752 (2019).........................................................4, 5

*Doyle* v. *Combined Sys., Inc.*,
    2023 WL 5945857 (N.D. Tex. Sept. 11, 2023)..................12

*Estados Unidos Mexicanos* v. *Smith & Wesson Brands, Inc.*,
    91 F.4th 511 (1st Cir. 2024)...............................................19

*Exxon Co., USA* v. *Sofec, Inc.*,
    517 U.S. 830 (1996).............................................................15

*FDA* v. *All. for Hippocratic Med.*,
    602 U.S. 367 (2024)...............................................................4

*First Resort, Inc.* v. *Herrera*,
860 F.3d 1263 (9th Cir. 2017)...........................................................29

*Foster* v. *Wintergreen Real Est. Co.*,
81 Va. Cir. 353 (2010)......................................................................16

*United States* v. *Frazier-El*,
204 F.3d 553 (4th Cir. 2000).............................................................14

*Gallimore* v. *Commonwealth*,
436 S.E.2d 421 (Va. 1993).................................................................17

*Greater Balt. Center for Pregnancy Concerns, Inc.* v. *Mayor and City Council of Balt.*,
721 F.3d 264 (4th Cir. 2013)...........................................26, 27, 28, 30

*Green* v. *Kyung Chang Industry USA Inc.*
2022 WL 987555 (Nev. Dist. Ct. Mar. 23, 2022) ...............................9

*Handsome Brook Farm, LLC* v. *Humane Farm Animal Care, Inc.*,
700 F. App'x 251 (4th Cir. 2017).................................................23, 27

*Hardaway* v. *Checkers Drive-In Rests., Inc.*,
483 F. App'x 854 (4th Cir. 2012)........................................................2

*Hesse* v. *Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020)...........................................28, 30

*Holmes* v. *Sec. Inv. Protection Corp.*,
503 U.S. 258 (1992)...........................................................................21

*Ileto* v. *Glock*,
565 F.3d 1126 (9th Cir. 2009)...........................................................12

*United States* v. *Int'l Minerals & Chem. Corp.*,
402 U.S. 558 (1971)...........................................................................14

*Jordan* v. *Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014).............................................................24

*Kansas* v. *UtiliCorp United, Inc.*,
497 U.S. 199 (1990).................................................................................22

*Lebron* v. *Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995).................................................................................10

*Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*,
572 U.S. 118 (2014)...........................................................................18, 21

*Limbach Co. LLC* v. *Zurich Am. Ins. Co.*,
396 F.3d 358 (4th Cir. 2005)..................................................................16

*Liparota* v. *United States*,
471 U.S. 419 (1985).................................................................................14

*In re Maple*,
434 B.R. 363 (Bankr. E.D. Va. 2010) ...................................................16

*Maroulis* v. *Elliott*,
151 S.E.2d 339 (Va. 1966).......................................................................16

*Martinez* v. *Duke Energy Corp.*,
130 F. App'x 629 (4th Cir. 2005)..............................................................2

*Md. Shall Issue, Inc.* v. *Anne Arundel Cnty. Md.*,
91 F.4th 238 (4th Cir. 2024) ..................................................................23

*Monster Energy Co.* v. *Vital Pharms., Inc.*,
2023 WL 2918724 (C.D. Cal. Apr. 12, 2023)........................................24

*Ocean State Tactical, LLC* v. *Rhode Island*,
95 F.4th 38 (1st Cir. 2024).....................................................................17

*Prescott* v. *Slide Fire Sols., LP*,
341 F. Supp. 3d 1175 (D. Nev. 2018).......................................................9

*Prescott* v. *Slide Fire Sols., LP*,
410 F. Supp. 3d 1123 (D. Nev. 2019).....................................................12

*United States* v. *Pressley*,
359 F.3d 347 (4th Cir. 2004)..................................................................11

v

*Quisenberry* v. *Huntington Ingalls, Inc.*,
818 S.E.2d 805 (Va. 2018)................................................................18

*Recht* v. *Morrisey*,
32 F.4th 398 (4th Cir. 2022) .......................................................23, 29

*Rehaif* v. *United States*,
588 U.S. 225 (2019)...........................................................................14

*RGR, LLC* v. *Settle*,
764 S.E.2d 8 (Va. 2014).....................................................................17

*Riley* v. *Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988)...........................................................................27

*Robertson* v. *Sea Pines Real Est. Cos., Inc.*,
679 F.3d 278 (4th Cir. 2012).............................................................6

*Robinson* v. *Matt Mary Moran, Inc.*,
525 S.E.2d 559 (Va. 2000)................................................................18

*Ruan* v. *United States*,
597 U.S. 450 (2022)...........................................................................14

*Scottsdale Ins. Co.* v. *Subscription Plus, Inc.*,
299 F.3d 618 (7th Cir. 2002).............................................................22

*Sierra Club* v. *U.S. Dep't of the Interior*,
899 F.3d 260 (4th Cir. 2018)..........................................................4, 6

*Slay's Restoration, LLC* v. *Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018).............................................................21

*Soto* v. *Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn.), *cert. denied, Remington Arms Co., LLC*
v. *Soto*, 140 S. Ct. 513 (2019).........................................................12

*Staub* v. *Proctor Hosp.*,
562 U.S. 411 (2011).....................................................................20, 22

*Va. State Bd. of Pharmacy* v. *Va. Citizens Consumer Council*,
425 U.S. 748 (1976)...........................................................................23

*Zauderer* v. *Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
   471 U.S. 626 (1985)................................................................26

**Constitution & Statutes**

15 U.S.C. § 7901(a)(4) ............................................................11

15 U.S.C. § 7901(b)(1) ............................................................20

15 U.S.C. § 7901(b)(6) ............................................................16

15 U.S.C. § 7903(2) .................................................................10

15 U.S.C. § 7903(4) ...................................................................8

15 U.S.C. § 7903(5)(A) ..........................................................7, 10

15 U.S.C. § 7903(5)(A)(ii) ....................................................13, 18

15 U.S.C. § 7903(5)(A)(iii) ...............................................*passim*

15 U.S.C. § 7903(5)(A)(v) .........................................................19

15 U.S.C. § 7903(5)(D) ...............................................................7

15 U.S.C. § 7903(6) .................................................................10

18 U.S.C. § 921(a)(3) .................................................................8

28 U.S.C. § 1291 .......................................................................1

National Firearms Act,
   26 U.S.C. § 5801 *et seq.* .............................7, 11, 12, 13

U.S. Const. amend. I.......................................................*passim*

U.S. Const. amend. II...............................................9, 25, 26, 27

Virginia Consumer Protection Act,
   Va. Code Ann. § 59.1–196 *et seq.* .............7, 11, 12, 16, 28

Virginia False Advertising Statute,
   Va. Code Ann. § 18.2–216 *et seq.* ...........7, 11, 12 16, 28

Virginia Uniform Machine Gun Act,
   Va. Code Ann. § 18.2–288 *et seq.* ......................................................7, 11, 12, 13

**Other Authorities**

151 Cong. Rec. S8911 (daily ed. July 26, 2005) (statement of Sen.
   Sessions) ...................................................................................................11

Ethan Cramer-Flood, U.S. Ad Spending 2024, EMARKETER (May
   9, 2024), https://www.emarketer.com/content/us-ad-spending-
   2024.........................................................................................................24

## PRELIMINARY STATEMENT

Defendants marketed their weapons, ammunition, and weapons accessories as the premier products for civilians to use for combat-style attacks on American streets, and Plaintiffs-Appellants suffered grave injuries when a young man amassed an arsenal of Defendants' products and used them to carry out a sniper-style attack at a Washington D.C. elementary school. As discussed in Plaintiffs-Appellants' Brief ("Opening"), the district court prematurely foreclosed Plaintiffs' efforts to seek redress for their injuries caused by Defendants' unlawful conduct based on misapplication of standing and proximate cause doctrines. Defendants-Appellees now double down on these errors, asking this Court to stretch Article III, the Protection of Lawful Commerce in Arms Act ("PLCAA"), and the First Amendment far beyond precedent to grant them immunity for their dangerous conduct. This Court should reject Defendants' request to create new law shielding companies that encourage gun violence, and reverse.

## ARGUMENT

### I.    This Court Has Jurisdiction.

There is no dispute that Plaintiffs appeal a final order, which 28 U.S.C. § 1291 grants jurisdiction to review. *See* Corrected Brief of Defendants-Appellees ("Opp.") 2. Defendants nevertheless suggest this Court lacks

1

jurisdiction because the complaints named John Doe defendants whose citizenship is unknown. Opp. 2. But, as Defendants acknowledge, Plaintiffs agreed to dismissal of the Doe defendants below, *see id.*, and have not appealed their dismissal. And even if the Doe defendants somehow remained parties, this Court may dismiss them on appeal. *See Banca Del Sempione* v. *Provident Bank of Md.*, 85 F.3d 615, *2 (4th Cir. 1996) (unpublished) ("[C]ourt of appeals has the authority to dismiss a dispensable, nondiverse party"). As the Doe defendants plainly are not indispensable parties, that result is both prudent and consistent with this Court's "view of preserving jurisdiction where possible." *Martinez* v. *Duke Energy Corp.*, 130 F. App'x 629, 637 (4th Cir. 2005); *see also Hardaway* v. *Checkers Drive-In Rests., Inc.*, 483 F. App'x 854, 855 (4th Cir. 2012).

## II.    Plaintiffs Have Standing.

The complaints plausibly link each Defendant's challenged conduct to Plaintiffs' injuries by alleging facts showing that Defendants' marketing practices had a predictable effect on the Shooter, resulting in harm to Plaintiffs. Opening 22-37. That is sufficient at this preliminary stage to satisfy Article III's traceability requirement, and Defendants' contrary arguments both misstate the law and mischaracterize Plaintiffs' arguments.

1. **"Predictable Effect."**  Plaintiffs allege that the Shooter's actions were the "predictable effect" of Defendants' egregious marketing practices, and Defendants therefore are at least in part responsible for causing Plaintiffs' injuries.  Specifically, the complaints allege that Defendants deliberately designed advertisements that appeal to impulsive, risk-seeking young men, JA37-38, JA41, JA80;[1] Opening 25-26; that their advertisements promote use of military-style weapons to civilians who have no lawful reason to use them as advertised, JA41-42; and that Defendants know that young men like the Shooter regularly commit mass shootings using weapons like the ones they advertise, yet have not curbed their dangerous and misleading marketing practices, JA30, JA77-78.  And Plaintiffs allege that the Shooter's decision to amass and use Defendants' weapons and accessories to rain fire on Plaintiffs was a predictable effect of Defendants' misleading advertising.  JA32, JA81.

That is a well-trodden theory of standing, *see* Opening 25-31, yet the district court ignored it entirely, instead myopically applying the "determinative or coercive effect" test, *id.* 26-31.  So do Defendants, who protest that they weren't "the ones who opened fire on [the] school."  Opp. 11.

---

[1]  For efficiency, Plaintiffs again cite to Ms. Lowy's complaint for allegations in both.

But this fundamentally misstates the relevant inquiry: Article III "does not require the [Defendants'] challenged action to be the sole or even immediate cause of the injury." *Sierra Club* v. *U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018). It is enough that Defendants' advertising practices foreseeably led to the Shooting. Opening 25. *See Dep't of Com.* v. *New York*, 588 U.S. 752, 768 (2019) (applying "predictable effect" test to find standing); *FDA* v. *All. for Hippocratic Med.*, 602 U.S. 367, 383-85 (2024) (plaintiff need only show a "predictable chain of events" from defendant's conduct to their injury).

As Defendants' own authority acknowledges, "[i]t is impossible to maintain, of course, that there is no standing to sue regarding action of a defendant which harms the plaintiff only through the reaction of third persons." *Block* v. *Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (discussed at Opp. 16). Where plaintiffs allege facts showing the effect of a defendant's actions on a third party whose actions in turn harmed plaintiffs, plaintiffs have "adequately alleged" standing. *Id.* at 308-09.

This is consistent with decades of precedent, including *Bennett* v. *Spear*, 520 U.S. 154, 169-70 (1997) (finding standing if there is a "determinative or coercive effect" on the third party), and *Department of Commerce*, 588 U.S. at

4

768 (finding standing if third party's actions were the "predictable effect" of defendant's action). *See* Opening 22-37.  Defendants' suggestion that adhering to the Supreme Court's "predictable effect" standard would be "upsetting decades of settled precedent requiring a determinative effect," Opp. 16, is incorrect.  *Bennett* did not announce an exclusive test for standing; on the contrary, the Supreme Court found standing in *Department of Commerce* (two decades later) applying the "predictable effect" test.  588 U.S. at 768.[2]

And Defendants' argument that the complaints contain only "collective allegations," Opp. 17, is demonstrably false.  Over 34 pages, Plaintiffs identified examples of unlawful advertisements *by each Defendant*, many of which bear a striking resemblance to the Shooting.  JA42-76.  Plaintiffs also alleged that the Shooter had an active online presence and was exposed to "Defendants' products and advertisements in a variety of forums," and decided to purchase each Defendant's weapons and/or weapons accessories.  JA32, JA81.  And in each count of the complaints, Plaintiffs alleged a connection between each Defendant's advertisements and (i) the Shooter and

---

[2]  Nor does *Department of Commerce* limit the "predictable effect" test to pre-enforcement challenges.  *Cf.* Opp. 15; *see Ateres Bais Yaakov Acad. of Rockland* v. *Town of Clarkstown*, 88 F.4th 344, 352-53 (2d Cir. 2023) (application of "determinative or coercive effect" standard post-injury "overstates" showing required for Article III).

(ii) his ultimate decision to commit the mass shooting using Defendants' products. JA84-111.

**2. "Determinative or Coercive Effect."** Even if Plaintiffs were required to satisfy the "determinative or coercive effect" test, they have done so. *See* Opening 31-37.

Defendants' assertions that traceability requires specific allegations that the Shooter saw each example of Defendants' widely disseminated online advertisements, Opp. 11-13, overstates Plaintiffs' burden. *Robertson* v. *Sea Pines Real Est. Cos., Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (plaintiffs not required "to prove [their] case in the complaint"). That is particularly so given that relevant information about the Shooter's interactions with Defendants is held by Defendants and law enforcement—not Plaintiffs. *See* Opp. 13; *see also* Opening 33 n.9.

And Defendants' focus on the allegation that the Shooter was influenced by their advertisements while "researching and planning" the Shooting, Opp. 14, again overlooks that each Defendant need not have been "the sole or even immediate cause of" Plaintiffs' injuries. *Sierra Club*, 899 F.3d at 284. Each Defendant bears responsibility for the role that its unlawful advertising played

6

in predictably bringing about and shaping the violent attack Plaintiffs suffered.

## III. PLCAA Does Not Bar Plaintiffs' Actions.

Defendants' PLCAA arguments similarly distort the statutory text and judicial interpretations of it, and therefore fail. *First*, PLCAA provides no defense to Defendants who are not "a manufacturer or seller of a qualified product." 15 U.S.C. § 7903(5)(A). *Second*, the Virginia Consumer Protection Act ("VCPA"), Virginia False Advertising Statute ("VFAS"), Uniform Machine Gun Act ("UMGA"), and National Firearms Act ("NFA") are "statute[s] applicable to the sale or marketing" of firearms and ammunition, *id.* § 7903(5)(A)(iii),[3] and PLCAA's predicate exemption does not require that Defendants have intentionally broken the law. *Third*, Plaintiffs have adequately alleged proximate cause under applicable law.

---

[3]   Because PLCAA applies by "action" or "case," this Court need not engage in a claim-by-claim inquiry to determine whether PLCAA applies with respect to each Defendant. Opening 50-51. Defendants dispute the meaning of these terms, Opp. 41-43, but do not contend with PLCAA's specific command, applicable here to minor N.T.'s case, that it does not "limit the right of a person under 17 years of age to recover damages . . . *in a civil action that meets 1* of the [PLCAA exceptions]." 15 U.S.C. § 7903(5)(D) (emphasis added).

**A.    PLCAA Cannot Protect Daniel Defense, Magpul, Surefire, or Torkmag for Arming the Shooter with Rifle Magazines.**

1. Defendants Daniel Defense, Magpul, Surefire, and Torkmag (who never raised PLCAA as a defense) cannot invoke PLCAA to avoid claims related to their high-capacity magazines.  Defendants appear to agree that a "component part" is an essential or necessary constituent part, *see* Opp. 35-36, 38-39, and primarily take issue with what the magazine must be essential or necessary *to* in order to be considered a "component part of a *firearm*." *Compare* Opening 40-44 *with* Opp. 36-37.  Defendants never explain, however, why this Court should depart from the Gun Control Act's definition of "firearm"—incorporated into PLCAA by reference—which supports Plaintiffs' interpretation that a component part (unlike a magazine) is essential to firing a shot.  18 U.S.C. § 921(a)(3) (definition of "firearm" hinges on weapon's ability to "expel a projectile"); 15 U.S.C. § 7903(4).  Instead, Defendants circularly argue that an AR-15 rifle is "designed to be used with a detachable magazine" and so a magazine therefore must be essential to its function.  Opp. 37.  But Defendants do not address Plaintiffs' core and dispositive position that an AR-15-style rifle can be—and often is—fired without a magazine, which shows how non-essential a magazine is.  *See* Opening 43-46.

8

Defendants' remaining arguments have no bearing on this analysis. *Green* v. *Kyung Chang Industry USA Inc.* is the only case addressing whether rifle magazines are "component part[s]" under PLCAA, and it unequivocally determined they are not. 2022 WL 987555, at *1 (Nev. Dist. Ct. Mar. 23, 2022). *Prescott* does not address this issue. *See Prescott* v. *Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018) (considering whether aftermarket rifle stocks, not magazines, were "component parts"). And *Green* specifically distinguished *Prescott* on the basis that rifle magazines (unlike stocks) are not essential to a rifle's functioning. *See Green*, 2022 WL 987555, at *1. *Academy* is also irrelevant: the parties there did not dispute that magazines were qualified products, so that issue was not before the court. *See In re Academy*, 625 S.W.3d 19 (Tex. 2021). And Defendants' Second Amendment case law, *see* Opp. 38, concerns a (far from settled) debate regarding whether magazines should be considered "arms" within the meaning of the Second Amendment, which has no bearing on Plaintiffs' claims. *See, e.g.*, *Del. State Sportsmen's Ass'n* v. *Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 216 (3d Cir. 2024) (Roth, J., concurring) ("*ANJRPC* does not stand for the proposition that *all* magazines are categorically protected Arms under the Second Amendment."),

9

*cert. denied*, No. 24-309 (U.S. Jan. 13, 2025).   PLCAA does not protect

Defendants for arming the Shooter with high-capacity magazines.

2. Plaintiffs also have always argued that PLCAA does not apply to

either Magpul or Surefire under 15 U.S.C § 7903(5)(A)'s definition of "qualified

product."  Because Plaintiffs' argument that these Defendants do not qualify

as "manufacturer[s]" or "seller[s]" of "a qualified product," 15 U.S.C.

§ 7903(2), (6), is merely an additional reason why PLCAA does not apply, this

Court can and should easily dispense with Defendants' forfeiture arguments.

*See, e.g.*, *Lebron* v. *Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) (no

waiver where party raised "new argument to support what has been his

consistent claim").

PLCAA requires a "manufacturer" or "seller" (other than a seller of

ammunition) to be licensed.  15 U.S.C. § 7903(2), (6).  Magpul and Surefire do

not dispute that they lack licenses.   Nothing in PLCAA stands for the

suggestion that unlicensed manufacturers and sellers of aftermarket parts are

protected.  Rather, reading the statute as a whole, the inclusion of "component

part" within PLCAA's definition of "qualified product" simply means that

licensed firearm manufacturers and sellers receive PLCAA protection if

someone is injured by one of their firearms' component parts.  This Court

cannot ignore PLCAA's plain text, *see, e.g.*, *United States* v. *Pressley*, 359 F.3d 347, 350 (4th Cir. 2004), particularly because Congress' legislative findings cited firearms' heavy regulations, 15 U.S.C. § 7901(a)(4), as supporting narrowed liability for third-parties' misuse of these products. *See, e.g.*, 151 Cong. Rec. S8911 (daily ed. July 26, 2005) (statement of Sen. Sessions) (PLCAA's "incredibly narrow" function was to "forbid[] lawsuits brought against lawful manufacturers and sellers of firearms or ammunition" who "followed the complex Federal regulations"). Nothing about that legislative judgment suggests that Magpul and Surefire, manufacturers and sellers of *unregulated* aftermarket magazines, should be immune from liability.

**B.    The VCPA, VFAS, UMGA, and NFA Are Statutes "Applicable to the Sale or Marketing" of Defendants' Firearms and Ammunition and Plaintiffs Have Pled Knowing Violations of Those Laws.**

Defendants next attempt to avoid liability by asking this Court to read requirements into the predicate exemption that are unsupported by PLCAA or precedent.

Defendants cannot distinguish, and so ignore, uniform decisions from courts across the country holding that state deceptive marketing statutes— like the VCPA and VFAS—qualify as predicate statutes because they are "applicable to the sale or marketing" of firearms and ammunition. 15 U.S.C.

11

§ 7903(5)(A)(iii); *Soto* v. *Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 317-18 (Conn.), *cert. denied*, *Remington Arms Co., LLC* v. *Soto*, 140 S. Ct. 513 (2019); *Prescott* v. *Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1138-39 (D. Nev. 2019); *Doyle* v. *Combined Sys., Inc.*, 2023 WL 5945857, at *10-11 (N.D. Tex. Sept. 11, 2023).[4]  Because they "specifically regulate[] the sale and marketing of goods," the VFAS, VCPA, and states' similar statutes qualify as predicate statutes, *see Prescott*, 410 F. Supp. 3d at 1138-39, even though they are not "legislatively directed toward the purchase and sale of firearms."  Opp. 34; *see also City of New York* v. *Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) (court "[did] not agree" that "PLCAA requires that a predicate statute expressly refer to the firearms industry"); *see also Prescott*, 410 F. Supp. 3d at 1138-39 (distinguishing the Nevada Deceptive Trade Practices Act from the "general common law tort theories of negligence and nuisance at issue in *Ileto* [v. *Glock*, 565 F.3d 1126 (9th Cir. 2009)]").  Because Defendants misconstrue the caselaw and otherwise acknowledge that the VCPA and VFAS apply to the sale and marketing of their products, Opp. 34, the Court's inquiry with respect to these statutes can end here.

---

[4]   *See also Brady* v. *Walmart, Inc.*, 2022 WL 2987078, at *7 (D. Md. July 28, 2022) ("relevant question is. . . whether [statute] is capable of being applied to the sale of firearms").

12

As for the NFA and UMGA, Defendants do not dispute that those statutes apply to the sale or marketing of firearms, but claim they cannot satisfy the predicate exemption because they contain no private rights of action. *See* Opp. 34 n.7. This is a red herring. The predicate exemption only requires a "violat[ion of] a State or Federal statute," 15 U.S.C. § 7903(5)(A)(iii), which is exactly what Plaintiffs' negligence per se claims allege, based on violations of the NFA and UMGA. JA110-111. It does not matter that the NFA and UMGA lack their own rights of action. *See, e.g.*, *Brown* v. *Wright*, 216 S.E.2d 13, 15 (Va. 1975) (discussing negligence per se claim based on failure to use turn signal). Plaintiffs' negligence per se claims therefore are exempt from PLCAA under both the predicate exemption and the negligence per se exemption. 15 U.S.C. § 7903(5)(A)(ii); Opening 63-64.

Moreover, Plaintiffs have adequately alleged that Defendants "knowingly" violated each statute by deliberately engaging in conduct that contravenes the predicate statutes. Opening 55-56. Defendants do not cite any case involving any civil statute—much less any case involving PLCAA— to support their contrary view that the predicate exemption only applies if they "knew they were violating a law and continued their conduct anyway." Opp. 32. It is black letter law that the term "knowingly" ordinarily requires only

13

"proof of knowledge of the facts that constitute the offense." *Bryan* v. *United States*, 524 U.S. 184, 192-93 (1998); Opening 55. Defendants stress that the Supreme Court has deviated from this rule, Opp. 31-32, but omit that the Court did so based on concerns that the *criminal* statutes at issue in those cases could carry *long prison sentences* for people who lacked culpable intent.[5] And even in the context of criminal statutes, "unless Congress clearly specifies otherwise," a knowingly mens rea "requires not that a defendant know that his conduct was illegal, but only that he know the facts that make his conduct illegal." *United States* v. *Frazier-El*, 204 F.3d 553, 561 (4th Cir. 2000) (quotation omitted).

Here, Congress did not "clearly specif[y]" any intent for PLCAA to adopt a heightened mens rea requirement reserved for criminal statutes. That the word "knowingly" precedes the word "violated" in 15 U.S.C. § 7903(5)(A)(iii) does not warrant a different result. *See United States* v. *Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 559-60, 563 (1971) (refusing to find

---

[5] *Rehaif* v. *United States*, 588 U.S. 225, 232 (2019) (laws with "harsh" potential penalty of "10 years in prison") (citation omitted); *Ruan* v. *United States*, 597 U.S. 450, 460 (2022) ("severe penalties" including life imprisonment "counsel in favor of a strong scienter requirement.") (internal citations omitted); *Liparota* v. *United States*, 471 U.S. 419, 420 n.1 (1985) (criminal statute with potential five-year sentence).

Congress clearly specified proof of knowledge of law when it simply required knowing violation of regulation).

### C.    Plaintiffs Have Pled Proximate Cause.

Plaintiffs have also satisfied the predicate exemption's requirement that Defendants' statutory violations be "a proximate cause of the harm for which relief is sought."  15 U.S.C. § 7903(5)(A)(iii).  Plaintiffs properly pled that their injuries were the foreseeable result of Defendants' conduct, and the district court erred by deciding the fact-intensive proximate cause inquiry against Plaintiffs at the pleadings stage.   Opening 56-63.   Plaintiffs allege that Defendants proximately caused Plaintiffs' injuries by targeting young men prone to violent, impulsive behavior—whom Defendants know are more likely to commit mass shootings—in deceptive advertisements that reached and influenced the Shooter.  Opening 58.  That is sufficient at this stage, and Plaintiffs should be afforded the opportunity to prove the causal chain linking Defendants' misconduct to their injuries.  *Exxon Co., USA* v. *Sofec, Inc.*, 517 U.S. 830, 840 (1996) ("The issues of proximate causation and superseding cause involve application of law to fact, which is left to the factfinder, subject to limited review.").

1.  **Plaintiffs Have Pled Proximate Cause under Virginia Law.**

This Court's proximate cause analysis should start and end with whether Plaintiffs have adequately alleged proximate cause under the laws of Virginia. *See Limbach Co. LLC* v. *Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (in diversity cases "the relevant state law controls"); *see also* 15 U.S.C. § 7901(b)(6) (purpose of PLCAA is to "preserve and protect the Separation of Powers doctrine and important principles of federalism [and] State sovereignty"). As already explained, Opening 56-63, Plaintiffs adequately alleged that their injuries resulted from "reasonably foresee[able]" risks of Defendants' unlawful marketing.[6] *Maroulis* v. *Elliott*, 151 S.E.2d 339, 344 (Va. 1966). None of Defendants' arguments support a different conclusion.

Defendants first argue that Virginia law presumes that violent acts by others are not foreseeable, Opp. 25, relying on a case from the 1800s opining

---

[6] Defendants cite no cases holding that the VCPA and VFAS—broad, remedial statutes—require their own showing of proximate cause, rather than a factual causal link. *See In re Maple*, 434 B.R. 363, 373 (Bankr. E.D. Va. 2010) ("Plaintiffs must allege that they have suffered some loss in order to assert a claim under the VCPA."); *Foster* v. *Wintergreen Real Est. Co.*, 81 Va. Cir. 353, *7 (2010) (overruling demurrer based on failure to allege "damages as a result of any false advertising" because proof of resulting damages was a trial issue). But even if that was not the case, Plaintiffs have adequately alleged proximate cause for all the reasons discussed herein.

that attempted murder was not foreseeable "[i]n a peaceful community, in a law-abiding and Christian land." *Connell's Ex'rs* v. *Chesapeake & Ohio Ry. Co.*, 24 S.E. 467, 469 (Va. 1896); *but see A.H.* v. *Rockingham Pub. Co., Inc.*, 495 S.E.2d 482, 486 (Va. 1998) (criminal conduct by others can be reasonably foreseeable if it "occurred frequently" before plaintiff's injury) (cited at Opp. 25). Whatever the merits of *Connell's* statement two centuries ago—long before mass shootings plagued American society—Defendants have facilitated "lethal technologies [] proceeding at an accelerated and unprecedented pace" in more recent years. *Bianchi* v. *Brown*, 111 F.4th 438, 463, 473 (4th Cir. 2024) (en banc). And because mass shootings are now "a weekly—and sometimes daily—event," *Ocean State Tactical, LLC* v. *Rhode Island*, 95 F.4th 38, 46 (1st Cir. 2024) (quotation omitted), Defendants' argument that they are unforeseeable is not plausible. *See also Gallimore* v. *Commonwealth*, 436 S.E.2d 421, 426 (Va. 1993) (gunshot discharged by third party did not sever causal connection between defendants' negligence and victim's death).[7]

---

[7] Defendants quibble with the different circumstance in which the *Gallimore* case arose, Opp. 27-28, ignoring that this case disproves Defendants' theory that violent acts by third parties are unforeseeable under Virginia law. That each case addresses unique facts is why proximate cause is almost always assessed by a jury. *See RGR, LLC* v. *Settle*, 764 S.E.2d 8, 27 (Va. 2014).

17

Defendants' next attempt to invoke the special protections afforded to sellers of alcohol under the vestigial "dram shop" rule also fails. Opp. 26-27. Dram shop non-liability is an "exception[]" to general tort liability principles. *Quisenberry* v. *Huntington Ingalls, Inc.*, 818 S.E.2d 805, 813 n.6 (Va. 2018). Defendants offer no basis for expanding this special rule, which their own authority describes as illustrating "societal problem[s]," to shield their wrongful conduct. *See Robinson* v. *Matt Mary Moran, Inc.*, 525 S.E.2d 559, 562 (Va. 2000) (cited at Opp. 26-27); *see also* Opening 56-63.

### 2. There Is No Separate Federal Proximate Cause Requirement, and Even If There Is, Plaintiffs Satisfied It.

Defendants also are wrong that Plaintiffs must meet a separate federal proximate cause standard under PLCAA's negligence per se and predicate exemptions. To start, Defendants offer no argument as to why PLCAA's negligence per se exemption—which says nothing about proximate cause, 15 U.S.C. § 7903(5)(A)(ii)—should be interpreted to silently incorporate some "federal proximate cause" standard. Nor have Plaintiffs "acknowledge[d]" that the "proximate-cause analysis for the two exceptions is identical" under federal law. Opp. 19. Plaintiffs simply noted that the district court dismissed

18

Plaintiffs' claims (including negligence per se) on proximate cause grounds under *Virginia* law.  *See* Opening 63.

With respect to the predicate exception, Defendants' own authority counsels that the "[p]roximate-cause analysis is controlled by . . . the statutory cause of action." *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  Defendants *do not cite a single PLCAA-related case* applying the federal proximate cause analysis they now advocate.  *See* Opp. 18-24.  To Plaintiffs' knowledge, no such case exists.  *See Estados Unidos Mexicanos* v. *Smith & Wesson Brands, Inc.*, 91 F.4th 511, 534 n.8 (1st Cir. 2024) ("Neither party proposes a definition of proximate cause specific to the predicate exception of the PLCAA.").[8]  Neither the text of PLCAA nor the cases Defendants cite supports Defendants' argument.

In fact, it is clear from the language of PLCAA's other exemptions and its purpose that Congress drafted the predicate exemption *not* to require that a defendant's conduct be the sole or immediate proximate cause.  For example,

---

[8] Defendants curiously assert that Plaintiffs "rely heavily on *Estados Unidos*" and devote three pages to attempting to distinguish and attack that decision.  Opp. 21-24.  The Opening Brief does not rely on the First Circuit's decision at all, but as previously explained, Plaintiffs' chain of causation is much simpler than in *Estados Unidos*, as Plaintiffs are direct victims of gun violence.  Opening 59-60.

Congress chose to limit the products liability exemption—but not the predicate exemption—to actions concerning (1) harm "resulting *directly*" from a product's foreseeable uses or (2) harm caused by a product's criminal use that was "*the sole* proximate cause." 15 U.S.C. § 7903(5)(A)(v) (emphases added). This intentional inclusion of language in "one section" and omission "from a neighbor[ing]" section "convey[s] a difference in meaning." *Bittner* v. *United States*, 598 U.S. 85, 94 (2023). Had Congress sought to narrow the predicate exemption through a sole or direct proximate cause requirement, it could have—but it did not.

Defendants' reliance on PLCAA's proclamation of its purpose, Opp. 21, undermines their argument. PLCAA "*prohibit[s] causes of action. . .* for the harm *solely caused* by the criminal or unlawful misuse of" products by others. 15 U.S.C. § 7901(b)(1) (emphases added). But "it is common for injuries to have multiple proximate causes," *Staub* v. *Proctor Hospital*, 562 U.S. 411, 420 (2011), and PLCAA does not insulate actors just because they are one among several contributors. Here, too, Congress chose not to preclude all causes of action where the harm was caused most immediately by others' criminal misuse of firearms.

20

Defendants nonetheless insist that their conduct cannot be the proximate cause of Plaintiffs' injuries because they did not have a "direct" enough relationship with Plaintiffs. *See* Opp. 19-21. But the cases Defendants cite invoke inapplicable statute-specific proximate cause analyses. For instance, in *Slay's Restoration, LLC* v. *Wright National Flood Insurance Company*, 884 F.3d 489, 493 (4th Cir. 2018), this Court explained that the Supreme Court in *Holmes* v. *Security Investor Protection Corporation*, 503 U.S. 258 (1992), held that the common law tenet of foreseeability does not apply to RICO, in part due to concerns about multiple recoveries under RICO (and its treble damages) for claims based "*merely* [on] the misfortunes visited upon a third person." *See Holmes*, 503 U.S. at 268-69 (emphasis added); *see also* Opp. 21. In contrast, and even ignoring the different statutory framework applicable here, Plaintiffs are the direct victims of gun violence that they have pled was proximately caused by Defendants' conduct.[9] Defendants' other cases, interpreting other inapplicable federal statutes, are no more instructive.

---

[9] *See Bridge* v. *Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (finding no barrier to RICO proximate cause where plaintiffs did not rely on defendants' alleged misrepresentations, but were the only party injured by them); *see also Lexmark Int'l, Inc.*, 572 U.S. at 140 (plaintiff "entitled to a chance to prove its case" where causal chain linking defendants' false advertising to plaintiff's harm included "intervening link" of third-party injury) (cited at Opp. 21).

*See Bank of Am. Corp* v. *City of Miami*, 581 U.S. 189, 201-03 (2017) (describing "proximate cause under the [Fair Housing Act]"); *Kansas* v. *UtiliCorp United, Inc.*, 497 U.S. 199, 212-13 (1990) (discussing the *Illinois Brick* rule developed under antitrust law to avoid multiple treble damages recoveries).

Defendants' final claim that the Shooter's conduct "breaks the causal chain," Opp. 20, fares no better. In fact, "the premise of [Defendants'] argument—that the [Shooter's] criminal [conduct] was a superseding cause that got the [Defendants] off the liability hook—is unsound." *Scottsdale Ins. Co.* v. *Subscription Plus, Inc.*, 299 F.3d 618, 620 (7th Cir. 2002) ("criminal acts are not superseding causes per se") (cited at Opp. 20). "A cause can be thought 'superseding' only if it is a 'cause of independent origin that was not foreseeable.'" *Staub*, 562 U.S. at 420 (quoting *Exxon Co., USA*, 517 U.S. at 837). For all of these reasons, Plaintiffs have adequately alleged proximate cause.

## IV. The First Amendment Does Not Bar Plaintiffs' Claims.

Plaintiffs' claims center around Defendants' promotion of their products through social media advertising. This is classic commercial speech and a well-established arena of government regulation: every state and the federal government regulates false or misleading advertising, and it is black letter law

that the First Amendment poses "no obstacle" to such regulation. *Va. State Bd. of Pharmacy* v. *Va. Citizens Consumer Council*, 425 U.S. 748, 771 (1976); *see also Recht* v. *Morrisey*, 32 F.4th 398, 410 (4th Cir. 2022) ("If advertising is misleading, it 'may be prohibited entirely.'" (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982))). Therefore, at this stage of litigation, the First Amendment analysis begins and ends with whether Plaintiffs have sufficiently alleged that Defendants' advertisements are misleading. They have.

Defendants cannot evade liability—the same liability *every* consumer-facing company faces—by spinning their advertising as political advocacy rather than commercial speech. The Supreme Court has provided a three-factor test for commercial speech—"whether the message is economically motivated, promotes a specific product, and is an advertisement"—with no one factor being determinative. *Handsome Brook Farm, LLC* v. *Humane Farm Animal Care, Inc.*, 700 F. App'x 251, 257 (4th Cir. 2017) (citing *Bolger* v. *Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983)); *see also Md. Shall Issue, Inc.* v. *Anne Arundel Cnty. Md.*, 91 F.4th 238, 248 (4th Cir. 2024) ("the advertising and promotion of products and services" is commercial speech).

Defendants' social media posts share all three qualities. They are all economically motivated: Defendants are for-profit companies using their

online presence to drive interest in their products, traffic to their websites, and purchases. *See, e.g.*, JA56-57 (featuring the hashtags #fiocchiammunition and #buyitall); JA63 ("For top tier AR15s and AR accessories, definitely check out @bravocompanyusa."); JA68 ("[v]isit the Griffin Armament website under 'Muzzle Devices' to check all the in stock options!"); JA73-74 (containing a link to Fostech's online store in the caption). The posts promote specific products and highlight their features. *See, e.g.*, JA73-74 (Fostech post containing a picture of and describing the "3 functions" of "[t]he Fostech Echo trigger"); s*ee also* JA42-44, JA47, JA51-53, JA56-63, JA65, JA67-68, JA71-72 (posts naming and promoting Defendants' products). For similar reasons, the posts are advertisements: they are disseminated to the public, promote Defendants' products, and encourage customers to buy them. *See, e.g.*, JA53-54 (promoting "New F-15 lowers!!!" and noting "a portion of each sale will go to an Ashli Babbitt fund"). This is textbook marketing in the modern era—social media has become one of the top channels for advertising spend in the country[10]— and courts routinely find that similar advertisements constitute commercial speech. *See Jordan* v. *Jewel Food Stores, Inc.*, 743 F.3d 509, 518-19 (7th Cir.

---

[10] Ethan Cramer-Flood, U.S. Ad Spending 2024, EMARKETER, (May 9, 2024), https://www.emarketer.com/content/us-ad-spending-2024.

2014) (advertisement congratulating Michael Jordan was commercial speech for a grocery chain because it was "aimed at fostering goodwill" for the brand and "increasing patronage" at their stores); *Monster Energy Co.* v. *Vital Pharms., Inc.*, 2023 WL 2918724, at *8 (C.D. Cal. Apr. 12, 2023) (Instagram post featuring product was commercial speech).

Defendants now argue—in what is, for many of them, an about-face from their position below—that their social media advertisements are not commercial speech. Tellingly, Defendants do not even acknowledge the well-established three-factor test for commercial speech. *See generally* Opp. 43-52. They instead assert, with sweeping generality, that all of the complaint's 50 social media posts are Second Amendment political advocacy. *Id.* This is meritless. The vast majority of the posts do not mention the Second Amendment or make any political argument; they are posts about Defendants' brands and products and why consumers should buy them. *See, e.g.*, JA50 ("SureFire manufactures professional grade products for those who go in harm's way . . . ); JA67-68 (describing Griffin's Taper Mount EZ Brake and how "anyone" can install it); JA72 (depicting a gun on a car seat with the caption, "[r]olling in style with . . . our folding pistol grip, our folding foregrip, and our GL-Core S buttstock"). When, as here, all three *Bolger* factors are

25

present, that "provides strong support for the conclusion that speech is . . . commercial speech." *Greater Balt. Center for Pregnancy Concerns, Inc.* v. *Mayor and City Council of Balt.* (*"Greater Balt."*), 721 F.3d 264, 285 (4th Cir. 2013) (quoting *Bolger*, 463 U.S. at 67).

Nor is Defendants' advertising political advocacy just because they may sometimes choose to link their products to a public debate about the Second Amendment.    The Supreme Court has warned against that exact misconstruction of First Amendment doctrine: "advertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech." *Zauderer* v. *Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 n.7 (1985).  "[C]ommunications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues." *Bd. of Trs. of State Univ. of N.Y.* v. *Fox*, 492 U.S. 469, 475 (1989).

Defendants also attempt to rely on the extremely narrow—and inapplicable—exception for commercial speech that is "inextricably intertwined" with noncommercial speech.  Opp. 48.  Defendants cite no Fourth Circuit case applying this exception; there isn't one.  Instead, there are a handful of cases *rejecting* attempts to improperly get heightened protection

26

for commercial speech on this basis.  *See Greater Balt.*, 721 F.3d at 287-88; *Handsome Brook Farm, LLC*, 700 F. App'x at 261.  In most cases, "[w]hen a message communicates both commercial and noncommercial speech, it is treated like commercial speech." *Handsome Brook Farm, LLC*, 700 F. App'x at 261-62.  The sole case in which the Supreme Court has found speech "inextricably intertwined" involved a situation where the government *required* non-profit fundraisers to include particular commercial speech (mandated disclosures) every time they engaged in noncommercial speech. *See Riley* v. *Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988).  This rendered it a highly unusual case, as the Supreme Court later acknowledged. *Bd. of Trs. of State Univ. of N.Y.*, 492 U.S. at 474 (rejecting an "inextricably intertwined" argument).  Unless it is "impossible" to convey noncommercial messages without commercial speech or "require[d]" that noncommercial messages "be combined with commercial messages," this narrow exception does not apply. *Id.*

Here, it is not impossible to either advocate for the Second Amendment without selling guns or sell guns without engaging in political advocacy. Defendants remain free to engage in political advocacy.  But when they promote their products to drive traffic to their online marketplaces and

promote sales, that is commercial speech that states may regulate. *See Bolger*, 463 U.S. at 67-68.

Even if any of the 50 posts that Plaintiffs cited in the complaint presented close questions—which they do not—it would be premature to affirm dismissal of the entire case on this ground. Analysis of whether speech is commercial "is fact-driven," context-dependent, and often requires discovery. *Greater Balt.*, 721 F.3d at 284-87 (remanding for discovery to determine whether speech was commercial). Defendants have not attempted to do this fact-intensive analysis for any post, nor did the district court.

The district court has also not yet had occasion to consider whether Plaintiffs sufficiently alleged that the 50 posts are deceptive or misleading, another fact-intensive question the Court must answer before assessing the scope of First Amendment protection. *See Hesse* v. *Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 n.1 (S.D.N.Y. 2020) (finding, for this very reason, that "[Defendant]'s constitutional argument puts the cart before the horse"). Defendants briefly acknowledge that this point is disputed, *see* Opp. 47, but do not argue that Plaintiffs have failed to allege the advertisements are misleading or deceptive under the VCPA and VFAS. *See generally* Opp. 43-52. Instead, they attempt to sidestep this issue by mischaracterizing Plaintiffs'

28

allegations as solely targeting speech "related to illegal activity." *See* Opp. 50. This is wrong and ignores the mountain of briefing below explaining Plaintiffs' allegations that Defendants' advertising is *misleading and deceptive*. *See, e.g.*, SA066-067; SA101-104.[11]

Defendants' remaining arguments are similarly meritless. They suggest that even if the social media posts in the complaints are commercial speech, Plaintiffs are trying to regulate noncommercial "aspects" of it. *See* Opp. 49-50. Not so. Plaintiffs allege injury based on Defendants' false or misleading advertising, a claim courts have routinely found does *not* violate the First Amendment. *See, e.g.*, *Recht*, 32 F.4th at 416 (rejecting First Amendment challenge to a false advertising law); *First Resort, Inc.* v. *Herrera*, 860 F.3d 1263, 1273-74 (9th Cir. 2017) (similar).[12]

---

[11] Plaintiffs made similar arguments in eight additional briefs, which are not cited here because they were not included in the joint or supplemental appendices.

[12] For similar reasons, Defendants are wrong that permitting liability here somehow exposes "firearm-laden . . . movie series" to liability. *Cf.* Opp. 50. Movies are artistic expression entitled to the highest protection. *Brown* v. *Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011). Advertising of those movies, however, *would* be subject to regulation, just like Defendants' commercial speech in this case. *See Charles* v. *City of Los Angeles*, 697 F.3d 1146, 1152 (9th Cir. 2012) ("That the underlying [television] program is itself entitled to full First Amendment protection does not cloak all advertisements for the program with noncommercial status.").

Nor does this case involve viewpoint discrimination.[13]  *Cf.* Opp. 51. Plaintiffs sue under universally applicable consumer protection statutes that apply equally to all viewpoints and all industries.

Finally, this Court should decline Defendants' invitation to toss this whole case at the pleadings stage in the name of constitutional avoidance. Dismissing a case based on the mere possibility of "serious constitutional issues," Opp. 52, would fly in the face of the requirement that, at this early stage, courts construe the facts in the light most favorable to the plaintiff.  The question for the Court is whether Plaintiffs have plausibly pled that the posts are deceptive or misleading commercial speech, not whether Defendants have raised the specter of any possible constitutional defense.  Courts—including this one—have routinely found the motion to dismiss stage too early to adjudicate a fact-intensive, disputed First Amendment argument. *See Greater Balt.*, 721 F.3d at 284-88; *Hesse*, 463 F. Supp. 3d at 474 n.1.  The district court is perfectly able to safeguard genuine First Amendment interests as the case

---

[13] Defendants' strict scrutiny argument is a red herring.  *See* Opp. 51.  If Defendants' advertising is—as Plaintiffs have plausibly alleged— misleading commercial speech, then it may be prohibited entirely, without any need for means-end balancing.  At this stage of litigation, where threshold fact-intensive questions about whether the speech is even protected remain disputed, Defendants' argument about the application of strict scrutiny is both wrong and premature.

progresses. This Court should not affirm dismissal based on Defendants' premature and wrong assessment of those interests.

## V.     The District Court's Additional Errors

Defendants try to brush aside the district court's additional errors, *see* Opening 64-65, as "procedural peccadillos," Opp. 53, but as Plaintiffs previously explained, these were issues that precluded dismissal of certain Defendants. Opening 64-65. And they underscore the slapdash nature of the court's opinion; rather than consider each Defendant's motion on its own merits, the court's decision swept far too broadly.

CONCLUSION

For the foregoing reasons, this Court should reverse or, in the alternative, vacate the dismissal and grant Plaintiffs leave to amend.

Dated: February 12, 2025                    Respectfully Submitted,

                                            */s/ H. Christopher Boehning*
                                            H. CHRISTOPHER BOEHNING
                                            JACOBUS J. SCHUTTE
                                            JENIFER N. HARTLEY
                                            PAUL, WEISS, RIFKIND,
                                            WHARTON & GARRISON LLP
                                                *1285 Avenue of the Americas*
                                                *New York, NY 10019*
                                                *(212) 373-3700*
                                                *cboehning@paulweiss.com*

KATHRYN M. ALI
ELIZABETH C. LOCKWOOD
MEGHAN PALMER
ALI & LOCKWOOD LLP
    *501 H Street NE, Suite 200*
    *Washington, DC 20002*
    *(202) 651-2475*
    *katie.ali@alilockwood.com*

*Counsel for Appellants Karen Lowy, individually and as parent and next friend of N.T., and Antonio Harris*

32

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND WORD COUNT LIMITATIONS

I, H. Christopher Boehning, counsel for Appellants and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), that the attached Reply Brief of Appellants is proportionally spaced, has a typeface of 14 points or more, and contains 6,496 words.

Dated: February 12, 2025

*/s/ H. Christopher Boehning*

H. Christopher Boehning

## CERTIFICATE OF SERVICE

I, H. Christopher Boehning, counsel for Appellants and a member of the Bar of this Court, certify that, on February 12, 2025, a copy of the foregoing Reply Brief of Appellants was served on all parties or their counsel of record through the CM/ECF system.


Dated: February 12, 2025

/s/ *H. Christopher Boehning*

H. Christopher Boehning